Richard D. BOKUM, II, Margaret B. Bokum, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 90–5641.

United States Court of Appeals, Eleventh Circuit.

June 4, 1993.

Richard C. Conover, Bozeman, MT, for petitioners-appellants.

Gary R. Allen, Chief, Teresa E. McLaughlin and Brican C. Griffin, Appellate Section, Tax Div., Dept. of Justice, Washington, DC, for respondent-appellee.

Before TJOFLAT, Chief Judge, HATCHETT, Circuit Judge, and HENDERSON, Senior Circuit Judge.

TJOFLAT, Chief Judge:

In this case, Richard Bokum and his wife Margaret Bokum prosecute separate appeals from a Tax Court decision holding them liable for $513,755.37 in additional income taxes for the 1977 tax year.[1] Mr. Bokum, appearing *pro se*, asks us to set aside a pretrial stipulation of the amount of taxes due, agreed to by his former attorney and the Commissioner's counsel, and to remand the case for a new trial.

1. These appeals, although prosecuted separately, share the same docket number, No. 90–5641.

Mrs. Bokum, appearing through her trial counsel,[2] does not challenge the stipulation, but contends that the "innocent spouse" exception to joint tax liability established by 26 U.S.C. § 6013(e) (1988),[3] precludes her liability for the additional taxes. Neither appeal has merit, and we therefore affirm.

## I.

The facts of this case are not complicated. In 1971, Mr. Bokum organized Quinta Land and Cattle Company (Quinta), a Subchapter S corporation, and became its sole shareholder through a stock swap transaction. He transferred shares of stock he held in Bokum Resources Corporation (BRC) to Quinta in return for all of the Quinta stock.

Mr. Bokum had formed Quinta in order to acquire an 11,000–acre cattle ranch in Montana owned by Kyd Cattle Company. To this end, acting as Quinta's president, he acquired control of the land by transferring Quinta's BRC stock and cash to Kyd for all of Kyd's stock.

In 1977, Bokum, acting through Quinta, had Kyd sell a large portion of the ranch, the proceeds of which were deposited in the Bokums' personal account. On its 1977 federal income tax return, Quinta reported that it had distributed $3,553,678 to Mr. Bokum, $2,605,272 of which was a dividend distribution classified as a long term capital gain, and $948,406 of which was a non-dividend distribution. On their joint 1977 income tax return, the Bokums reported the $2,605,272 shown by Quinta as a dividend distribution, reduced that figure by $2,087,057, the amount Mr. Bokum claimed as his basis in the Quinta stock, and reported the resulting $516,215 as long term capital gain. The Bokums did not report or otherwise disclose in their tax return the $948,406 non-dividend portion of the distribution from Quinta.

The Commissioner disagreed with the Bokums' treatment of the Quinta distributions on their 1977 tax return and issued a notice of deficiency. The Commissioner had determined, among other things, that the Bokums had understated their taxable income because they overstated the basis in Mr. Bokum's Quinta stock. The Bokums timely filed a petition in Tax Court challenging the Commissioner's deficiency determination.

Following pretrial negotiations, the Bokums and the Commissioner stipulated through counsel that the Bokums owed the IRS an additional $513,755.37 for the 1977 tax year. The parties intended to litigate Mrs. Bokum's claim that she was an innocent spouse under 26 U.S.C. § 6013(e), and thus not liable for the additional taxes. She argued that she was entitled to innocent spouse status because she had had nothing to do with the operation of Quinta or the ranch, and was unaware of the details of the ranch's sale.

The Tax Court found that under the innocent spouse exception, it would not be "inequitable" to hold Mrs. Bokum jointly liable for the tax deficiency, and that she "had reason to know" of the substantial understatement of tax. The Tax Court entered judgment against her accordingly. The Bokums now appeal.

## II.

### A.

In *Stevens v. Commissioner,* 872 F.2d 1499, 1504 (11th Cir.1989), we outlined the requirements a taxpayer must show to be eligible for the innocent spouse exception under 26 U.S.C. § 6013:[4]

(A) a joint return has been made under this section for a taxable year,
(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,
(C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and
(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax

---

**2.** Richard C. Conover, Mrs. Bokum's attorney on appeal, replaced Burton J. Haynes, who had entered into the stipulation.

**3.** This opinion cites to the 1988 version of the Internal Revenue Code. Unless otherwise noted, the provisions cited are the same, in all relevant respects, as those in effect for the 1977 tax year.

**4.** 26 U.S.C. § 6013 provides in part:
   (e) Spouse relieved of liability in certain cases.
   (1) In general. Under regulations prescribed by the Secretary, if—

[A] spouse may obtain relief from liability where, on a joint return, (1) there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (2) in signing the return, the spouse did not know, and had no reason to know, that there was such substantial understatement of tax liability on the return; and (3) taking into account all of the facts and circumstances, it would be inequitable to hold the spouse liable for the deficiency attributable to such understatement. The taxpayer bears the burden of proving each of these elements by a preponderance of the evidence.

(Footnote and citations omitted.) The Tax Court found that Mrs. Bokum failed to show she was an innocent spouse for two reasons. First, because the Bokums merely misunderstood the tax consequences of the ranch sale, it would not be "inequitable" to hold Mrs. Bokum jointly liable for the additional taxes. Second, Mrs. Bokum failed to show that she "had no reason to know" of the substantial understatement of tax liability. Because we find that it is not "inequitable" to hold Mrs. Bokum jointly liable, we need not determine whether she had "reason to know" of the substantial understatement.

The Tax Court has determined that where both spouses merely mistake the consequences of the tax law, it is not "inequitable" under the innocent spouse statute to hold them both to joint liability. *Lessinger v. Commissioner*, 85 T.C. 824, 838, 1985 WL 15414 (1985); *Smith v. Commissioner*, 70 T.C. 651, 673, 1978 WL 3391 (1978); *McCoy v. Commissioner*, 57 T.C. 732, 734–35, 1972 WL 2489 (1972); *see also Sanders v. United States*, 509 F.2d 162, 169 (5th Cir.1975). *McCoy v. Commissioner* illustrates this point. There, a tax deficiency arose from the misreporting of an incorporation of a partnership. The McCoys did not know that the amount by which the partnership's liabilities exceeded the partnership's adjusted basis

was a recognizable gain on their tax return. *McCoy*, 57 T.C. at 735. The court held that:

> [s]ection 6013(e) was [not] designed to abate joint and several liability where the lack of knowledge of the omitted income is predicated on mere ignorance of the legal tax consequences of transactions the facts of which are either in the possession of the spouse seeking relief or reasonably within his reach.
>
> . . . .
>
> [W]e find there is no inequity in this case. As we see it, the omission here resulted not from any concealment, overreaching, or any other wrongdoing on behalf of the husband, though we appreciate that the "innocent spouse" provisions do not specifically require wrongdoing in order to be brought into play.

*Id.* at 734–35; *see also Lessinger*, 85 T.C. at 838; *Smith*, 70 T.C. at 673. The court concluded that it was not inequitable to hold the McCoys jointly liable for the tax deficiency.

This conclusion is consistent with the purpose of the innocent spouse exception. Congress enacted section 6013(e) to remedy the "grave injustice" caused by joint and several liability in some cases. S.Rep. No. 1537, 91st Cong., 2d Sess. 2 (1970), *reprinted in* 1970 U.S.C.C.A.N. 6089, 6090; *see Quinn v. Commissioner*, 524 F.2d 617, 627 (7th Cir.1975). It was originally designed to protect one spouse, for example, where the other spouse secretly embezzled or squandered funds.

As first enacted, the innocent spouse exception was available only for omissions from income and not for erroneous deductions or credits. *See* 26 U.S.C. § 6013(e)(1)(A) (1982). Congress amended the section in 1984, in part, to relieve a spouse of joint liability where the understatement of tax arises from groundless claims of deductions as well. Pub.L. No. 98–369, 98 Stat. 494, 803 (1984). The legislative history makes clear that the amendment was enacted to expand the reach of the statute to those situations where, for example, "one spouse claims phony business deductions in order to avoid paying tax and the other spouse has no reason to

for such taxable year attributable to such substantial understatement,

then the other spouse shall be relieved of liability for tax ... to the extent such liability is attributable to such substantial understatement.

That provision, as is now exists, became effective July 18, 1984, and applies retroactively. *See* Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 424(c), 98 Stat. 494, 803 (1984).

know that the deductions are phony." H.R.Rep. No. 432 (Pt. 2), 98th Cong., 2d Sess. at 1502, *reprinted in* 1984 U.S.C.C.A.N. 697, 1143. In light of the congressional purpose to protect one spouse from the other's financial deception, the Tax Court could reasonably consider it "not inequitable" to hold the spouses jointly liable when they merely misunderstood the applicable law.

Finally, this result is consistent with our own cases applying the innocent spouse exception. Given that taxpayers are presumed to know the tax consequences of a transaction, *see Stevens*, 872 F.2d at 1505 n. 8, we refuse to find that spouses, who are mistaken about the operation of the tax law, are nevertheless released from tax liability.

■ The record shows that neither of the Bokums were aware of the tax consequences of receiving ranch sale proceeds through corporate dividends. As such, we perceive no inequity in holding them both jointly liable for their common mistake. The Tax Court did not err in finding that Mrs. Bokum did not qualify for the innocent spouse exception.[5]

### B.

■ We now turn to Mr. Bokum's claim that he should be relieved of his pretrial stipulation. The Bokums petitioned the Tax Court in order to challenge the Commissioner's calculation of deficiency on July 12, 1983. On May 14, 1985, the Bokums, through their attorney, Burton J. Haynes, and the Commissioner, through his counsel, stipulated that Mr. Bokum owed $513,755.37 in additional taxes for 1977 and that if Mrs. Bokum failed to obtain the innocent spouse exception she would be jointly liable for those taxes.[6]

The Tax Court scheduled the case to be tried on June 23, 1986. Five days after receiving the court's notice of trial, Hayes moved the court for leave to withdraw as the Bokums' counsel and to postpone the trial. Haynes claimed that he had to withdraw because Mr. Bokum had recently threatened to sue his law firm on another matter. The court granted the motion and continued the trial. Richard C. Conover thereafter filed his appearance as the Bokums' attorney.

On January 6, 1987, Conover moved the Tax Court to relieve the Bokums from the stipulation they had made, claiming that the stipulation had been entered into on the erroneous assumption that Mr. Bokum's basis in the Quinta stock was zero. The court denied the motion. The court concluded that no injustice would flow from enforcing the stipulation, because the stipulation had been negotiated in good faith by counsel and provided for concessions on both sides, resulting in a substantial reduction in the taxpayers' liability. Moreover, the Bokums' counsel had represented to the IRS that Mr. Bokum's initial basis in the Quinta stock was zero, and Mr. Bokum, who knew of the representation, had not objected. The court also noted that there was no indication that the Bokums' attorneys, specifically Mr. Haynes, had a conflict of interest until after the stipulation had been signed.

Mr. Bokum contends that the stipulation should be set aside because it does not adequately reflect the basis he had in the Quinta stock when the ranch was sold, and the lawyer who executed it was laboring under a conflict of interest.

Tax Court Rule 91(e) provides that parties' stipulations are binding, and may not be changed unless "justice requires."[7] We will enforce such stipulations "unless manifest in-

---

5. Mrs. Bokum argues that she "received no benefit" from the tax savings the misreporting would have produced. This is a consideration in determining whether it would be inequitable to hold a spouse jointly liable for taxes. *See, e.g., Flynn v. Commissioner*, 93 T.C. 355, 1989 WL 107095 (1989); *Purcell v. Commissioner*, 86 T.C. 228, 1986 WL 22087 (1986); *Terzian v. Commissioner*, 72 T.C. 1164, 1979 WL 3839 (1979). The Tax Court found, however, and we agree, that Mrs. Bokum received benefits from the tax savings.

6. The stipulation also covered deficiencies for the tax years 1979 and 1981. Those tax years are not before this court.

7. Tax Court Rule 91(e), 26 U.S.C.A. § foll. 7453 (1989) provides in part:

> A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation, unless otherwise permitted by the Court or agreed upon by the parties. The Court will not permit a party stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so where justice requires.

**1136**

justice would result." *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1019 (11th Cir.1982); *Loftin & Woodard, Inc. v. United States*, 577 F.2d 1206, 1232 (5th Cir.1978).[8]

We agree with the Tax Court that the Bokums would suffer no injustice by enforcing the stipulation. Mr. Bokum argues that his basis in his Quinta stock was not zero, as the Commissioner determined, and as assumed in the stipulations. He thus claims that it would be unjust to hold him to an allegedly erroneous statement in a stipulation. We disagree. Mr. Bokum concedes that he represented that his basis in his Quinta stock was zero. Mr. Haynes, who prepared the stipulation, wrote a letter during the negotiations conceding that the basis was zero. Mr. Bokum received a copy of this letter and did not object to that assertion. The record indicates that the stipulation was the result of a long and technical process of arms-length negotiations. It would not be unjust to hold Mr. Bokum to the stipulation.

We also are not persuaded by Mr. Bokum's argument that the stipulation was tainted by his lawyer's conflict of interest. Haynes signed the stipulation before the relationship between Mr. Bokum and Haynes' firm had become contentious. The Tax Court found, and it is clear from the record, that any conflict of interest that may have existed arose after Mr. Bokum agreed to the stipulation.

In sum, we conclude that no "manifest injustice would result" from enforcing this stipulation. The Tax Court did not abuse its discretion in refusing to set it aside.

### III.

We conclude that Mrs. Bokum is not an innocent spouse, and that the Tax Court did not abuse its discretion by refusing to set aside the pretrial stipulation. Accordingly, we affirm the judgment of the Tax Court.

AFFIRMED.

**8.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.