ANTHONY W. LIGGIO AND MARIA ELENA LIGGIO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Liggio v. Commissioner
Docket No. 42999-85
United States Tax Court
T.C. Memo 1993-426; 1993 Tax Ct. Memo LEXIS 437; 66 T.C.M. (CCH) 732; September 14, 1993, Filed *437 Decision will be entered under Rule 155. Anthony W. Liggio, pro se. For Maria Elena Liggio, Petitioner: Edward P. Guttenmacher and Jerome S. Richman. For respondent: Kathleen L. Donohue. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes for 1981 and 1982 as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6659
1981
$ 33,777
$ 7,268.25
$ 10,132.80
1982
19,660
-  5,829.00
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the issues remaining for decision are (1) whether petitioner Maria Elena Liggio is entitled to relief as an innocent spouse under section 6013(e) and (2) whether petitioner Maria Elena Liggio is liable for the addition to tax under section 6651(a)(1) in 1981. In this opinion, Maria Elena Liggio will be referred to as petitioner, Anthony W. Liggio will be referred to as Liggio, and Maria Elena and Anthony W. Liggio together will be referred to as petitioners. *438 The deficiencies that were agreed upon and from which petitioner seeks innocent spouse relief relate to petitioners' investment in Choctaw Energy Partners, Ltd. (Choctaw), in particular the minimum annual royalty and intangible drilling cost deductions taken by that entity. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Miami, Florida, when the petition was filed. Neither petitioner nor Liggio had any education beyond high school. Prior to her marriage to Liggio, petitioner worked for a short time as a receptionist at a Spanish-language newspaper in Miami, Florida. Petitioner later worked in doctors' offices preparing insurance forms and working as a receptionist. Petitioner was 32 years old when she married Liggio on November 14, 1975, after a 2-month courtship. The marriage was petitioner's third and Liggio's fourth. Petitioner had two children, Allison, age 7, and Edward, age 9, at the time she married Liggio. Petitioner was receiving $ 10 a week per child as child support from her ex-husband, Edward Sabatini, at the time she met and married Liggio. Petitioner's *439 children resided with petitioner and Liggio after their marriage. Liggio provided horses, cars, and family entertainment for petitioner's children. During her marriage to Liggio, petitioner was a housewife. She had check-writing authority on their joint checking accounts. During 1981 and 1982, petitioners' household joint account was at the Bank of Coral Gables. In addition to the bank cards that she signed for the Bank of Coral Gables, during her marriage to Liggio, petitioner signed several other bank signature cards. If requested by Liggio, petitioner would sign anything without asking questions. Petitioner had credit cards in her name at various department stores. Petitioner paid amounts toward the balances on their credit cards only to the extent instructed by Liggio. Petitioners' first home was purchased in 1977. In 1982, petitioners sold that home and used the proceeds as part of the $ 245,000 purchase price for a larger home. By 1988, the home in which petitioners resided was valued at approximately $ 530,000. These homes were owned jointly by petitioners. Liggio was the president and owner of First Petroleum Corporation, a filing service company for an oil and *440 gas drilling program that was sponsored by the Bureau of Land Management. First Petroleum Corporation also issued paychecks and Forms W-2 to petitioner for 1981 and 1982. Daniel Boyle, a friend and business associate of Liggio, would, on occasion, discuss Liggio's business over dinner at petitioners' house and in petitioner's presence. During 1981, Liggio decided to invest in Choctaw as a tax shelter. Petitioners filed joint Federal income tax returns for 1981 and 1982. Petitioners' 1981 return reported a $ 66,832 loss deduction attributable to Choctaw and total wage income of $ 132,750, including $ 3,250 of wage income attributable to petitioner, and claimed a refund of $ 6,518 that petitioners elected to apply to the subsequent year's estimated tax liability. Petitioners' 1982 return reported a $ 40,713 loss deduction attributable to Choctaw, total wage income of $ 198,600, including $ 6,375 attributable to petitioner, and claimed a refund of $ 20,786 that petitioners elected to apply to the subsequent year's tax liability. The 1982 return included a Schedule W, Deduction for a Married Couple When Both Work, on which petitioners claimed a $ 219 deduction, and a $ 4,000 Individual *441 Retirement Account (IRA) deduction. Petitioner gathered information on charitable contributions and interest income and gave that information to Liggio to assist in the preparation of income tax returns. Petitioner signed the returns. Petitioner did not question Liggio about the sizeable losses claimed on the 1981 and 1982 returns, the Schedule W deduction claimed on the 1982 return, or the $ 4,000 IRA deduction claimed on the 1982 return. Petitioners' 1981 return was received by the Internal Revenue Service (IRS) on October 18, 1982. Edward Sherota, Jr., (Sherota), a certified public accountant, prepared petitioners' returns from 1979 until at least 1984. Sherota has no specific recollection of preparing petitioners' 1981 and 1982 returns or whether he prepared an extension request for petitioners' 1981 return. Sherota's office policy was to have his clients mail the documents that he prepared for them, and he would keep copies of the returns and extension requests. Sherota's accounting records were destroyed by Hurricane Andrew in August 1992. Although this case was commenced in 1985, petitioner did not request copies of any 1981 extension requests from Sherota prior to *442 Hurricane Andrew. Petitioner filed for a divorce from Liggio on October 31, 1988, in Dade County, Florida. The divorce was finalized on June 16, 1989. OPINION Spouses filing a joint tax return are jointly and severally liable for the tax arising therefrom. Sec. 6013(d). If, however, a taxpayer spouse satisfies the requirements of section 6013(e), he or she is relieved from such joint and several liability. In order to invoke the protection of section 6013(e), petitioner here must satisfy all of the following requirements with respect to each taxable year involved: (1) a joint return was filed (section 6013(e)(1)(A)); (2) such return contains a substantial understatement of tax (sections 6013(e)(1)(B) and 6013(e)(3)); (3) the substantial understatement is attributable to grossly erroneous items, defined in the case of a deduction as items with no basis in fact or law (sections 6013(e)(1)(B) and 6013(e)(2)); (4) the grossly erroneous items are items of the other spouse, Liggio (sections 6013(e)(1)(B) and 6013(e)(2)); (5) in signing the return, petitioner did not know, and had no reason to know, that there was such a substantial understatement (section 6013(e)(1)(C)); *443 (6) taking into account all the facts and circumstances, it is inequitable to hold petitioner liable for the deficiency in tax attributable to such substantial understatement (section 6013(e)(1)(D)); and (7) the understatement exceeds a specified percentage of the adjusted gross income for petitioner's preadjustment year (section 6013(e)(4)).
Failure to meet any one of the statutory requirements will prevent petitioner from qualifying for relief under section 6013(e). Bokum v. Commissioner, 992 F.2d 1132 (11th Cir. 1993), affg. 94 T.C. 126, 138 (1990); Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. T.C. Memo. 1988-63. The parties have stipulated that joint returns were filed for 1981 and 1982. Respondent has conceded that those returns contained substantial understatements of tax attributable to a grossly erroneous item and that the 1981 and 1982 deficiencies exceeded the percentage of income requirements of section 6013(e)(4) as to 1984, petitioner's preadjustment year. Thus, there is no dispute as to petitioner's satisfying four of the *444 seven requirements. Still in dispute is whether petitioner meets the remaining requirements for innocent spouse status. We are persuaded from the evidence that the Choctaw investment was attributable to Liggio. Liggio made the business decisions during the marriage of petitioners, and the evidence is consistent that he made the decision to invest in Choctaw. On the other hand, we are not persuaded that petitioner did not know or have reason to know of the substantial deductions on the tax returns arising from Choctaw, and she therefore fails to satisfy the requirements for innocent spouse relief. Liggio testified categorically that he advised petitioner that Choctaw was a tax savings device recommended by Sherota and that she approved of that goal. Petitioner merely denied her knowledge or understanding of Liggio's business affairs, claiming lack of understanding even if Liggio explained matters to her. Petitioner relies on Price v. Commissioner, 887 F.2d 959 (9th Cir. 1989), revg. an oral opinion of this Court. In Bokum v. Commissioner, 94 T.C. 126, 151 (1990), affd. 992 F.2d 1132 (11th Cir. 1993), *445 we respectfully declined to follow the opinion in Price in a case, like this one, appealable to the Court of Appeals for the Eleventh Circuit. We applied instead the standards set forth in Stevens v. Commissioner, supra at 1505-1507. In any event, this case is distinguishable from Price. There, the wife seeking innocent spouse relief had made inquiries of her husband about the deductions that were claimed on their joint return. Here, petitioner denies any inquiry to Liggio. Here, as in Bokum, the facts also differ from those in Stevens. Nonetheless, we held that Mrs. Bokum knew or had reason to know that the tax return treatment was not proper. Here, the deductions that were claimed on petitioners' returns in relation to Choctaw were over 50 percent of the reported wage income in 1981 and over 20 percent of the reported wage income in 1982. Thus, what we said of Mrs. Bokum applies also to petitioner: "She cannot obtain the benefits of section 6013(e) by simply turning a blind eye to -- by preferring not to know of -- facts fully disclosed on a tax return, of such a numerical magnitude as would reasonably put her on notice *446 that further inquiry would need to be made." Bokum v. Commissioner, 94 T.C. at 148. As the Court of Appeals said in Stevens v. Commissioner, supra at 1505-1506: The [reason to know] test establishes a "duty of inquiry" on the part of the alleged innocent spouse. Hence, the court's analysis must focus on whether the spouse had sufficient knowledge of the facts underlying the claimed deductions such that a reasonably prudent person in the taxpayer's position would question seriously whether the deductions were phony. * * * The alleged innocent spouse's role as homemaker and complete deference to the husband's judgment, concerning the couple's finances, however, standing alone are insufficient to establish that a spouse had no "reason to know." See Shea [v. Commissioner,] 780 F.2d [561, 565 (6th Cir. 1986)].
In Bokum and Stevens, innocent spouse relief was denied, although it was recognized that the spouse claiming relief was ignorant of the correct tax consequences of a transaction. Moreover, in the absence of proof that the other spouse was not equally ignorant of the correct tax consequences, *447 it is not inequitable to hold a spouse liable for deficiencies from improper deductions. See Bokum v. Commissioner, 992 F.2d at 1135; 94 T.C. at 156-157; McCoy v. Commissioner, 57 T.C. 732, 735 (1972). On the entire record, we conclude that petitioner has failed to prove that she satisfies the requirements of section 6013(e)(1)(C) and (D). Finally, with respect to the section 6651(a)(1) addition to tax, petitioner contends that, because petitioners' 1981 return was filed October 18, 1982, it should be assumed that the return was mailed pursuant to an extension obtained through October 15, 1982. Respondent concedes that an automatic extension to June 15, 1982, was obtained. There is no reliable evidence, however, that a subsequent extension was obtained. Petitioner merely surmises, based on Sherota's speculation, that an extension would have been obtained pursuant to Sherota's usual policy and that the application for extension was misfiled or misplaced by the IRS. If Sherota had applied for the second extension, his policy was to retain a copy. Yet no copy was obtained from Sherota or *448 produced to respondent during the 7 years that this case was pending prior to the loss of Sherota's records in a hurricane. Petitioner's evidence is insufficient to prove that an application for extension was even filed, and there is no evidence that one was granted. Petitioner has also failed to prove that the late filing was due to reasonable cause. She simply abdicated all responsibility for her tax obligations. Although petitioner also contends that the addition to tax should be computed for 4 months at 20 percent rather than for 5 months at 25 percent, there is no evidence that the return was mailed by October 15. Again petitioner speculates that mailing took place and that the postmarked envelope was lost by the IRS. Personal delivery of the return to an office of the IRS on October 18, however, would explain several inconsistencies in IRS records relied on by petitioner and would support a 25-percent addition to tax. The addition to tax under section 6651(a)(1) must be sustained. To reflect concessions by the parties, Decision will be entered under Rule 155.