ETHEL EVANS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Evans v. Commissioner
Docket No. 3920-91
United States Tax Court
T.C. Memo 1993-464; 1993 Tax Ct. Memo LEXIS 478; 66 T.C.M. (CCH) 988; October 5, 1993, Filed *478 For petitioner: Stewart I. Mandel
For respondent: Anita A. Gill PARKER
PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1984
$ 23,560.50
$ 1,178.03
[1]
1985
18,009.73
900.49
[2]
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. Petitioner does not dispute the deficiencies in tax or the additions to tax for the years at issue. The issue to be decided is whether petitioner is entitled to innocent spouse relief as provided in section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time the petition was filed, petitioner Ethel Evans (petitioner) resided at 12500 Edgewater Drive, Apartment *479 #203, in Lakewood, Ohio. Petitioner was born on July 15, 1928, in Cleveland, Ohio. Petitioner was graduated from Bowling Green State University in 1951, receiving a liberal arts degree with majors in Spanish and business. She has a master of science degree in chemistry from Case Western Reserve University, and a master of arts degree in education from Baldwin-Wallace College. Petitioner has worked as a foreign language translator at a bank, has written verses in Spanish for greeting cards for American Greetings, and has worked in education as a teacher and supervisor. She worked as an educator for 26 years until 1983 when she retired. Petitioner is married to John J. Evans (Evans). They were married in 1972 and have no children. For the first 5 years of their marriage, petitioner and Evans scrimped and saved to buy a home that was later sold to buy their apartment at 12500 Edgewater Drive in Lakewood, Ohio. In 1977, Evans purchased L & S Industries, Inc., a corporation which manufactured heater kits for Army vehicles and earthmoving equipment. Although Evans was permitted to pay for the corporation over a 5-year period, the business prospered, and Evans was able to pay the *480 full purchase price in 3 years. From approximately 1977 until the middle of 1986, Evans gave petitioner $ 1,400 every 2 weeks for household expenses such as the mortgage, the maintenance fee, and car payments. During that period, petitioner and Evans lived an average lifestyle. They were very hard working and never took vacations. Petitioner had always wanted to work in her husband's business, but he had never wanted her to become too involved. In 1982, petitioner and Evans discussed the subject and decided that it was time for petitioner to begin working for L & S Industries. Petitioner took early retirement from her teaching position in 1983 in order to begin working at L & S Industries. After petitioner retired, she received a pension of about $ 11,000 a year. Because she did not have 30 years of service, she retired on a reduced pension. After petitioner retired, contrary to her expectations, Evans would not permit her to work for L & S Industries. Over dinner one evening, Evans told petitioner that he had made her secretary of the corporation so that she could get control of part of the company in the event anything happened to him. Petitioner never attended any corporate *481 meetings at L & S Industries, nor did she ever sign any corporate minutes. Petitioner never became involved in any respect with L & S Industries. Petitioner has not worked since she retired from teaching in 1983. She was not aware of any business in which her husband was involved other than L & S Industries. In the late 1970's, Evans had entered into a joint venture with David Felman (Felman) known as Evans & Felman. Evans & Felman was in the business of leasing machinery and equipment. From the inception of the joint venture, Evans and Felman reported their gains or losses from the Evans & Felman joint venture on Schedule E of their respective individual income tax returns. In 1984, Evans and Felman also began operating a boat dealership known as Seaway Marine, Inc. (Seaway Marine). Seaway Marine was incorporated in Florida in 1984. However, Evans and Felman did not treat the boat business as a separate entity but operated it as part of the joint venture, Evans & Felman. Evans deducted the expenses of Seaway Marine on Schedule E of the joint income tax returns he and petitioner filed for tax years 1984 and 1985. Neither of those returns makes any reference to Seaway Marine. *482 Petitioner was completely unaware of the existence of Seaway Marine or of any boat business operated by her husband. In 1983, soon after she retired from teaching and after Evans refused to allow her to work for L & S Industries, petitioner learned that her husband was having an affair with a young woman, 38 years his junior, who was employed at L & S Industries. Petitioner told Evans to move out of their apartment, which he did in the latter part of 1983. When Evans moved out, he moved to an apartment two buildings away where his girlfriend was ensconced. Sometime during Evans' separation from petitioner (the end of 1983 until sometime in 1987), Evans moved from the apartment he had shared with his girlfriend in Lakewood, Ohio, to a refurbished barn in Peninsula, Ohio. In January of 1984, petitioner learned she had breast cancer. She had a modified radical mastectomy in February of 1984. Due to her loss of self-esteem following the loss of her teaching job, the loss of any job with Evans' company, and the breakup of her marriage, petitioner began to see a therapist. [1] She continued to see various therapists until sometime in 1987. During the same time period, she also saw *483 specialists on a regular basis for high blood pressure, excessive weight loss, and as follow-up for facial reconstructive surgery that had been done in earlier years. She was also caring for her 92-year-old mother throughout this period. During their separation, Evans continued to send petitioner $ 2,800 each month until the middle part of 1986. Petitioner was using her own pension payments for her mother's care. In 1986, Evans' business went bankrupt, and he stopped sending money to petitioner. With the loss of his business and money, Evans' relationship with his girlfriend also ended. Over a period of time, he pleaded with petitioner for a reconciliation. Sometime in 1987, petitioner reunited with Evans because she was not able to support herself and continue to care for her mother. Evans lived *484 in Peninsula, Ohio, and petitioner stayed in Peninsula for a couple of days and then returned to her apartment in Lakewood. In April of 1987, Evans had a severe heart attack. After that Evans moved back into the Lakewood apartment with petitioner, where they live together solely for economic survival. Evans' only income now is his Social Security check, and petitioner must use her pension to pay their living expenses. She could no longer use her pension for her mother's care; the mother died in 1991 at age 100. From the time of their marriage in 1972 through 1983, petitioner gave Evans' accountant any tax records she had, and the accountant would prepare the tax returns. Evans would bring the tax return home, and petitioner would review it and ask Evans any questions she had about the return before signing it. The record is unclear as to the handling of the 1983 return in 1984. [2]
*485 In 1985, when Evans asked petitioner for the tax information for the 1984 return to send to his accountant, petitioner told him she wanted to make out the tax return herself, that she wanted to be independent. Evans insisted on filing a joint return. Although petitioner did not trust Evans in personal matters, she still trusted him in business matters. Petitioner did not attempt to file a separate return for 1984. Petitioner and Evans filed a joint tax return for 1984, but petitioner did not see the return after it was prepared and did not sign it. See supra note 2. "Ethel K. Evans" was signed on the return, but it was not petitioner's signature. In 1986, petitioner phoned Evans and told him she wanted to prepare the 1985 tax return herself or take it to an accountant herself. Again, Evans insisted on filing a joint return. Petitioner finally took her material to Evans' accountant to prepare the 1985 tax return and did not file a separate return. Petitioner and Evans filed a joint return for 1985. Again, petitioner did not see the return after it was prepared and did not sign it. See supra note 2. Although "Ethel K. Evans" is signed on the return, it is not petitioner's *486 signature. Petitioner did not know how her purported signature became affixed on either the 1984 or 1985 tax return. The labels on the 1984 and 1985 tax returns showed an address in Peninsula, Ohio, where Evans was residing. Evans told petitioner that the 1984 and 1985 returns had been filed, and she did not seek further verification that returns had been filed for 1984 or 1985. Petitioner had pension income in the amount of $ 11,164.91 in 1984, and in the amount of $ 11,525.87 in 1985. [3]
During the latter part of 1986, petitioner and Evans became aware that the Internal Revenue Service (IRS) was auditing their 1984 return. On December 2, 1986, petitioner sent a letter to the accountant addressing the question raised by the IRS concerning her pension income on the 1984 tax return. See supra note 3. She did not request to see *487 the return at that time. She trusted the accountant and trusted her husband in business matters, so she assumed that whatever was on the return was correct. No part of the deficiencies in this case is attributable to petitioner's pension income. Petitioner filed joint returns with Evans for 1986, 1987, and 1988. In 1989, Evans was indicted for defrauding the Government on defense contracts and for not paying employees' taxes. Thereafter, petitioner began filing separate individual tax returns because she no longer trusted Evans after his indictment and because of the other problems that had developed with the 1984 and 1985 returns. In a notice of deficiency dated December 3, 1990, respondent disallowed net losses claimed on the Schedules E of those joint income tax returns in the amounts of $ 47,409 in 1984, and $ 37,754 in 1985. These losses arose out of activities of Seaway Marine. The explanation to the disallowance stated: According to our records, the boat was sold by Seaway Marine and Yacht, Inc. This, per the Florida State Office, had a corporate standing. Since this boat was owned and sold by the corporation, you may not take a Schedule C deduction for the expenses. *488 These are expenses of the corporation and should have been deducted by the corporation. Therefore, the net Schedule E loss is disallowed in full.
The parties have stipulated that the expenses were actually incurred by Seaway Marine and should have been reported by Seaway Marine on a corporate return. As a result of the changes to the Federal income tax for 1984, respondent also disallowed a general business credit in the amount of $ 317 taken on the 1984 return. Petitioner had never heard of a company called Seaway Marine and was not aware that Seaway Marine owned a boat. [4] She learned about Seaway Marine and the boat in 1990 when the IRS wrote to her and Evans. She was not an officer of Seaway Marine, and she was not aware that Evans was involved in any respect with the purchase, lease, or sale of marine equipment or boats. *489 OPINION If a husband and wife file a joint return, each becomes jointly and severally liable for the tax due. Sec. 6013(d)(3). A spouse, however, may be relieved of such liability if he or she proves entitlement to innocent spouse protection under section 6013(e). To qualify for innocent spouse relief, petitioner must meet the following statutory requirements for each of the taxable years at issue: (1) Petitioner and Evans must have filed a joint return; (2) on the joint return there must have been a substantial understatement of tax; (3) the substantial understatement of tax must be attributable to grossly erroneous items; (4) the grossly erroneous items must be items of Evans; (5) petitioner must not have known, or have had reason to know, of the substantial understatement; (6) considering all of the facts and circumstances, it must be inequitable to hold petitioner liable for the deficiency attributable to the substantial understatement; and (7) the understatement must exceed a specified percentage of petitioner's preadjustment year income. Sec. 6013(e); Purcell v. Commissioner, 86 T.C. 228, 235 (1986), affd. 826 F.2d 470 (6th Cir. 1987). *490 Petitioner has the burden of proving that she has satisfied each statutory requirement of section 6013(e). Rule 142(a). She will not qualify for innocent spouse relief if she fails to prove any one of the statutory requirements. Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). Respondent agrees that, for each of the years at issue, a joint return was filed, there was a substantial understatement of tax, the understatement was attributable to items of Evans, and that the understatement exceeds the specified percentage of petitioner's preadjustment year income. The following issues remain in dispute: (1) Whether the understatement is attributable to "grossly erroneous items"; (2) whether petitioner knew or had reason to know of the substantial understatement; and (3) considering all of the facts and circumstances, whether it would be inequitable to hold petitioner liable for the tax. 1. Grossly Erroneous Items
For purposes of section *491 6013(e), a deduction is grossly erroneous if there is no basis in fact or law for the deduction. Sec. 6013(e)(2)(B). "[A] deduction has no basis in fact when the expense for which the deduction is claimed was never, in fact, made. A deduction has no basis in law when the expense, even if made, does not qualify as a deductible expense under well-settled legal principles or when no substantial legal argument can be made to support its deductibility." Douglas v. Commissioner, 86 T.C. 758, 762-763 (1986). The term "grossly erroneous items" means deductions that are fraudulent, frivolous, phony, or groundless. Purcell v. Commissioner, 826 F.2d at 475; Douglas v. Commissioner, supra at 763. Respondent disallowed expenses reported on Schedule E. Petitioner cannot merely rely on respondent's disallowance of a deduction as proof that the deduction is grossly erroneous. Douglas v. Commissioner, supra at 763. In this case, however, the notice of deficiency specifies that respondent disallowed the deductions because the expenses were incurred by Seaway Marine *492 and not by Evans individually. Furthermore, the parties have stipulated that Seaway Marine was incorporated in Florida in 1984, Seaway Marine expenses were deducted on Schedule E of the 1984 and 1985 income tax returns, and the disallowed expenses were actually incurred by Seaway Marine. The expenses were not incurred by Evans individually or by the Evans & Felman joint venture. Thus, there is no basis in fact for Evans' claiming a Schedule E deduction. Furthermore, there is no basis in law for Evans' deduction of Seaway Marine expenses on the joint returns. Section 162(a) allows a taxpayer to deduct all "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". The payment by one taxpayer of an expense of another taxpayer's trade or business, however, is not deductible. Deputy v. du Pont, 308 U.S. 488, 494 (1940); Welch v. Helvering, 290 U.S. 111, 115 (1933). Furthermore, shareholders cannot deduct expenses attributable to an active corporation on their individual returns, even if the corporation does not file a corporate tax return. Deputy v. du Pont, supra; *493 Kout v. Commissioner, T.C. Memo. 1972-212. Thus, even when a shareholder pays such expenses, the shareholder is generally not permitted to deduct from his personal income his payment of the corporation's expenses. Deputy v. du Pont, supra; Betson v. Commissioner, 802 F.2d 365, 368 (9th Cir. 1986), affg. on this issue T.C. Memo. 1984-264; Rink v. Commissioner, 51 T.C. 746, 751 (1969). The expenditures, if not loans, are considered contributions to the capital of the corporation under section 263. Betson v. Commissioner, 802 F.2d at 371. An exception to this general rule exists if the taxpayer pays the expenses of another to protect or promote his own trade or business. Gould v. Commissioner, 64 T.C. 132, 134-135 (1975). Under this exception, however, the taxpayer must make the payments to retain or protect the taxpayer's existing, ongoing business rather than to acquire, invest in, or establish a new business. Dietrick v. Commissioner, 881 F.2d 336 (6th Cir. 1989), *494 affg. T.C. Memo. 1988-180; Pepper v. Commissioner, 36 T.C. 886, 895 (1961). In this case, the record clearly indicates that Seaway Marine was incorporated in 1984 for the purpose of starting a new boat dealership business, and the disallowed deductions were for expenses actually incurred by Seaway Marine. Therefore, the exception could not apply. Evans' claimed deduction is groundless. We hold that there is no basis in fact or in law for the disallowed deductions. [5]
*495 2. Knowledge of the Understatement
If on a joint return there is a substantial understatement of tax attributable to grossly erroneous items of the taxpayer's spouse, the taxpayer seeking innocent spouse relief must establish that in signing the return, or in this case consenting to the filing of the joint return, he or she did not know, and had no reason to know, that there was such substantial understatement. Section 6013(e)(1)(C). Therefore, petitioner must establish that she did not know, and had no reason to know, there was a substantial understatement of tax reported on the joint return. The facts in this case establish that petitioner did not have actual knowledge of the substantial understatement. Although petitioner consented to the filing of the joint returns, she did not sign or see the completed returns. In determining whether petitioner had reason to know of the substantial understatements of tax, the test is whether a reasonable person, with knowledge of the facts possessed by petitioner at the time she consented to the filing of the return, should have been alerted to the possibility of a substantial understatement or would infer that erroneous deductions *496 had been made. Shea v. Commissioner, 780 F.2d 561, 565-566 (6th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-310; Flynn v. Commissioner, 93 T.C. 355, 365 (1989). In determining whether a spouse had reason to know of a substantial understatement of tax, courts have considered the alleged innocent spouse's level of education, his or her participation in business affairs or bookkeeping, the presence of unusual or lavish expenditures or any large unexplained increase in the family's standard of living, and the allegedly culpable spouse's evasiveness and deceit about the family's finances. Flynn v. Commissioner, supra at 365-366. Although petitioner is highly educated and handled the household finances, she had no involvement in Evans' businesses. There was never a large unexplained increase in their standard of living or any lavish expenditures. Petitioner was not aware of the existence of Seaway Marine or that it was in the business of renting or selling boats. The joint returns reported the expenses as attributable to the Evans & Felman joint *497 venture. Although petitioner did not examine the joint returns, we do not think that such examination would have put her on notice that further inquiry was necessary, nor do we think that further inquiry would have alerted her to the fact that Evans was taking erroneous deductions for expenses properly reportable by Seaway Marine. We hold that petitioner did not know and had no reason to know of the substantial understatement of tax. Inequitable to Hold Petitioner Liable
In assessing whether it would be inequitable to hold a spouse liable, we consider (1) whether the spouse claiming relief significantly benefited from the grossly erroneous items attributable to the culpable spouse ( Estate of Krock v. Commissioner, 93 T.C. 672, 678 (1989)); (2) whether the spouse claiming relief has been deserted by, or divorced or separated from, the culpable spouse ( sec. 1.6013-5(b), Income Tax Regs.); and (3) probable future hardships that would be visited upon the innocent spouse if he or she is not relieved from liability ( Sanders v. United States, 509 F.2d 162, 171 n. 16 (5th Cir. 1975)). Normal support is not considered *498 a "significant 'benefit'". Sec. 1.6013-5(b), Income Tax Regs.; Estate of Krock v. Commissioner, supra at 677; Flynn v. Commissioner, 93 T.C. at 367. Normal support is determined by the circumstances of the parties. Sanders v. United States, supra at 168; Flynn v. Commissioner, supra.
During 1984 and 1985, petitioner was separated from her husband. She had retired the year before on a reduced pension which she used for the care of her elderly mother. The monthly support she received from Evans during that period was $ 2,800, which was the same amount she had received from him since 1977. Under the circumstances, the amount she received was normal support. She reunited with Evans in 1987 after he stopped sending her any money and following the failure of his business. Thereafter her pension payments were used for their living expenses, and she could no longer spend that money for her mother. Evans now has only his Social Security checks as income, and the spouses continue to live together only for economic survival. Petitioner received no *499 benefit from the grossly erroneous deductions. We conclude it would be inequitable to hold petitioner liable for the understatement of tax attributable to the erroneous deductions. For all of the foregoing reasons, we hold that petitioner is entitled to innocent spouse relief under section 6013(e). Based on the foregoing, Decision will be entered for petitioner.
Footnotes
1. 50 percent of interest due on $ 23,243.64.↩
2. 50 percent of interest due on $ 18,009.73.↩
1. She also consulted two lawyers whose advice was not particularly helpful. One told her that a divorce would cost $ 30,000, and the other suggested that her husband's extra-marital affair might benefit her marriage.↩
2. Respondent tried to establish through cross-examination of petitioner that she had in fact reviewed the 1983 return when it was prepared in 1984 and had signed it. At the trial petitioner was obviously confused about the years -- the year of the return itself versus the year of preparation and signing of a return. In view of the personal disasters, including a breast cancer operation, befalling petitioner at the time, the Court thinks it highly unlikely that petitioner followed the same return preparation procedures as in previous years. Also since petitioner did not see or sign either the 1984 or 1985 return, the Court is unwilling to assume that she either signed the 1983 return or ever saw it. The 1983 return is not in evidence.↩
3. Those amounts were reported on the joint Federal tax returns, but all of the amount was excludable from taxable income in 1984 and all except $ 1,751.22 was excludable in 1985.↩
4. Apparently that boat was sold at some point. However, contrary to respondent's suggestion on brief, the deficiencies in this case did not arise out of the sale of that boat. The Schedules E and the statutory notice of deficiency deal with income and expenses of the boat business, not a capital transaction.↩
5. It is unnecessary to discuss the income and depreciation items reflected on the Schedules E, since respondent only disallowed the net↩ loss claimed each year. For example, had respondent merely disallowed the expense deductions, there would have been additional income in 1984 of $ 11,771 ($ 71,772 rents received minus $ 60,001 depreciation = $ 11,771 income). In that event the total adjustment to taxable income for the year 1984 would have been an increase of $ 59,180, rather than the $ 47,409. The same is also true for 1985. In the statutory notice of deficiency respondent seems to have conceded that all of the Schedule E items (income, expenses, and depreciation) related to Seaway Marine, a separate taxable entity, and therefore increased taxable income only by the amount of the net loss claimed on the Schedule E.