T.C. Memo. 2015-198

UNITED STATES TAX COURT

MARK A. WILLIAMS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12777-13.                          Filed October 7, 2015.

<u>Gregory M. McCauley</u>, for petitioner.

<u>Harry J. Negro</u> and <u>John A. Darazsdi</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  Petitioner seeks review of the determination by the Internal Revenue Service (IRS or respondent) that he is not eligible for relief from joint and several liability for tax years 2000 through 2003.  The sole question presented

**[\*2]** is whether he is eligible for such relief under section 6015(f).[1]  We hold that he is not so entitled.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated by this reference.  Mark A. Williams (petitioner) and Kathleen Williams were married in 1987.  They are still married and have been living together continuously since then.  They resided in Pennsylvania when petitioner filed his petition.

Background

Petitioner graduated from high school and attended two years of community college.  He has held a variety of managerial jobs during his career.  During 2000 he worked as a building manager for an architectural firm and for HUSA Cigna Corporation.  During 2001-2002 he worked for Basement Doctor Waterproofing Company (Basement Doctor) and later as a project manager for Belfour Telecom.  He was unemployed during 2003.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times; all Rule references are to the Tax Court Rules of Practice and Procedure; and all dollar amounts are rounded to the nearest dollar.  Petitioner initially sought relief from joint and several liability under sections 6015(b), (c), and (f).  At trial his attorney stated that petitioner seeks relief only under subsection (f).  We treat this as a concession that he is not entitled to relief under subsection (b) or (c).

**[*3]**   Mrs. Williams has a high school education.  From 1987 until October 2004 she worked as a receptionist and secretary for Bernard Bagdis, an attorney.  Her duties included typing letters, filing, and paying office bills.

Throughout their marriage Mrs. Williams has been primarily responsible for the family's finances.  Petitioner knew where the couple banked and how many accounts they had, but he rarely wrote checks on those accounts.  For major expenditures, such as home improvements, petitioner and Mrs. Williams would consult to determine how much they could afford; petitioner would then decide what to buy.

Petitioner and Mrs. Williams filed joint Federal income tax returns for 1987 through 1995.  On these returns they reported in full the salary income that each of them earned.  Petitioner prepared these returns himself and, in some years, his father reviewed them for accuracy.  By 1995 petitioner had gained experience in preparing tax returns.

Mr. Bagdis during this period was promoting a variety of tax-evasion schemes that ultimately led to his imprisonment for tax crimes.  In 1995 or 1996 he offered one of these schemes to Mrs. Williams.  He told her that she could bring home more income from her secretarial job if she were paid through Administar Corporation, a Delaware C corporation that he owned.  Under this

[*4] scheme Mr. Bagdis proposed to deposit sums equal to her pretax salary in an Administar checking account over which Mrs. Williams would have control. She could then write checks on this account to pay her family's living expenses without reporting any of her salary income on her tax returns.

Mrs. Williams asked petitioner several times whether he thought she should participate in the Administar scheme. Petitioner initially said no, and Mrs. Williams did not participate in this scheme in 1995 or 1996. Rather, she continued to receive, and she and petitioner continued to report for Federal income tax purposes, her usual salary from Mr. Bagdis.

In 1997 Mrs. Williams again broached with petitioner the possibility of participating in the Administar scheme. This time petitioner agreed to speak with Mr. Bagdis about it. Petitioner did not ask Mr. Bagdis to explain how this plan would work. He simply asked Mr. Bagdis whether the scheme was "legal," and Mr. Bagdis said "yes." Petitioner then agreed to Mrs. Williams' participation; before doing so, he did not seek outside advice concerning the scheme's legitimacy.

Sometime during 1997 Mr. Bagdis ceased issuing salary checks to Mrs. Williams and instead deposited in an Administar checking account sums equal to her pretax salary. Mrs. Williams wrote checks on this account to pay the living

[*5] expenses that she and petitioner incurred. Mrs. Williams continued to receive her compensation from Mr. Bagdis in this way through October 2004. Mrs. Williams signed every check written on the Administar account through 2003.

During 2001 petitioner earned $21,800 as compensation from Basement Doctor. Mr. Bagdis was a principal shareholder of Basement Doctor. Petitioner's earnings from Basement Doctor were deposited into the same Administar account over which Mrs. Williams exercised control.

For 1996-1999 petitioner and Mrs. Williams filed Federal income tax returns as married filing separately. (The record does not clearly establish who prepared the 1996-1999 returns but the Court infers that someone in Mr. Bagdis' law office prepared them.) For 2000-2003 petitioner and Mrs. Williams resumed the filing of joint Federal income tax returns. Someone at Mr. Bagdis' office prepared the 2000-2003 joint returns using information that petitioner and Mrs. Williams supplied.

The information petitioner supplied for 2000-2003 included Forms W-2, Wage and Tax Statement, reporting his wages from sources other than Basement Doctor. Petitioner reviewed the returns that Mr. Bagdis' office prepared. He and Mrs. Williams signed these returns, and she took them to her office to be filed. These returns reported none of Mrs. Williams' secretarial income and none of

**[*6]** petitioner's Basement Doctor income that Mr. Bagdis had deposited in the Administar account that Mrs. Williams controlled.

As a result of her involvement in Mr. Bagdis' schemes, Mrs. Williams faced criminal charges. She ultimately pleaded guilty to one count of filing a false Federal income tax return for 2001 in violation of section 7206(1). In her guilty plea she stipulated that she had also willfully filed false returns for 2000, 2002, and 2003.

Following conclusion of the criminal proceeding, the IRS examined the joint returns that petitioner and Mrs. Williams filed for 2000-2003. In April 2006 petitioner and Mrs. Williams signed Form 4549, Income Tax Examination Changes, agreeing to deficiencies and civil fraud penalties relating to their wages that had been diverted to Administar during this period. The deficiencies and fraud penalties to which petitioner and Mrs. Williams agreed are as follows:

| Year | Deficiency | Penalty sec. 6663 |
|------|-----------|-------------------|
| 2000 | $10,008 | $7,506 |
| 2001 | 10,946 | 8,208 |
| 2002 | 7,863 | 5,897 |
| 2003 | 4,724 | 3,543 |

**[*7]**  Petitioner testified that he did not have assistance of counsel when he signed the Form 4549.  He testified that he signed this Form after Mrs. Williams told him that she "would go to jail" if he did not sign it.  In April 2008 the IRS assessed the deficiencies and penalties set forth above.

Petitioner knew that Mrs. Williams earned a salary working for Mr. Bagdis during 2000-2003 and knew that her salary was not reported on their joint returns for those years.  Petitioner knew that he earned compensation working for Basement Doctor during 2001 and knew that this compensation was not reported on their 2001 joint return.  Petitioner knew that all of this money was being paid to Administar and that Mrs. Williams was writing checks on an Administar bank account to defray their joint household and living expenses.  Petitioner does not currently have any health problems and did not have any such problems at the time he signed the 2000-2003 joint returns.  He has never been a victim of spousal abuse or domestic violence.

In December 2010 petitioner filed a request for relief from joint and several liability under section 6015(b), (c), and (f) for tax years 2000-2003.  On March 11, 2013, respondent mailed him a Final Appeals Determination denying this request for relief.  On June 6, 2013, petitioner timely sought review in this Court pursuant to section 6015(e)(1).

**[*8]**                                    OPINION

I.      Burden of Proof

Except as otherwise provided in section 6015, the taxpayer bears the burden

of proving that he or she is entitled to relief from joint and several liability.  Rule

142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 F. App'x 34

(6th Cir. 2004).  Both the scope and standard of our review in cases requesting

relief from joint and several liability are de novo.  Porter v. Commissioner, 132

T.C. 203, 210 (2009).

II.     Relief Under Section 6015(f)

Married taxpayers may elect to file a joint Federal income tax return.  Sec.

6013(a).  After making this election, each spouse is jointly and severally liable for

the entire tax due for that year.  Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C.

276, 282 (2000).  In certain circumstances, however, a spouse who has filed a joint

return may seek relief from joint and several liability under procedures set forth in

section 6015.

Section 6015(b) specifies procedures for relief from liability for all joint

filers, and subsection (c) specifies procedures to limit liability for taxpayers who

are no longer married or are living separately.  Petitioner concedes that he is not

entitled to relief under subsection (b) or (c).

**[*9]**    Section 6015(f) provides that "equitable relief" may be afforded to a tax-payer if "relief is not available to such individual under subsection (b) or (c)." "Under procedures prescribed by the Secretary" such relief may be available if, "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)." Sec. 6015(f)(1); sec. 1.6015-4(a), Income Tax Regs.  The Commissioner has specified the procedures governing equitable relief in Revenue Procedure 2013-34, section 4.01, 2013-43 I.R.B. 397, 399-400.[2]

Revenue Procedure 2013-34, supra, sets forth seven threshold conditions that a requesting spouse must satisfy to be eligible for equitable relief.  A requesting spouse who satisfies these conditions may qualify for a "streamlined determination of equitable relief" if (among other things) he or she is "no longer

_____

[2]Revenue Procedure 2013-34, 2013-43 I.R.B. 397, which modified and superseded Revenue Procedure 2003-61, 2003-2 C.B. 296, applies to requests for relief from joint and several liability that were filed on or after September 16, 2013, or that (like petitioner's request) were pending in Federal court on that date. Although we are not bound by the guidelines set forth in Revenue Procedure 2013-34, supra, we consult those guidelines in determining whether a taxpayer is entitled to equitable relief.  See Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Sriram v. Commissioner, T.C. Memo. 2012-91, 103 T.C.M. (CCH) 1482, 1484-1485.

**[\*10]** married to the nonrequesting spouse." Id., sec. 4.02. We assume without deciding that petitioner meets these seven threshold conditions.[3] However, he was ineligible for a "streamlined determination" because he was and remains married to Mrs. Williams.

A requesting spouse who meets the threshold conditions but does not qualify for a "streamlined determination" may nevertheless be granted equitable relief under Revenue Procedure 2013-34, section 4.03. That section sets out a nonexclusive list of factors relevant in assessing a taxpayer's entitlement to such relief. Neither any single factor nor a majority of factors controls this determination; the degree of importance of each factor varies depending on the requesting spouse's facts and circumstances. See id. sec. 4.03(2). Relief may be denied even where a majority of factors favors relief and vice versa. See id. sec. 3.05, 2013-43 I.R.B. at 398. The Court may choose to assign varying weight to the listed factors, or to include other factors, depending on the circumstances of the case. See Hall v. Commissioner, T.C. Memo. 2014-171, at \*38.

---

[3]The seventh condition considers the extent to which the liability is attributable to an item of the nonrequesting spouse. Rev. Proc. 2013-34, sec. 4.01(7), 2013-43 I.R.B. at 399. That condition is met here only in part, because a portion of the deficiency for 2001 is attributable to petitioner's unreported income from Basement Doctor.

**[\*11]** Revenue Procedure 2013-34, section 4.03, directs our attention to the following factors: (1) marital status, (2) economic hardship, (3) legal obligation to pay the Federal tax liability, (4) mental or physical health, (5) subsequent compliance with Federal tax laws, (6) significant benefit, and (7) knowledge or reason to know about the deficiency or unpaid tax liability. We find that the first four of these factors are neutral. Petitioner is still married to Mrs. Williams; he has not shown that he would suffer economic hardship if relief is denied; there was no legal obligation (such as a divorce decree) that made either spouse specifically responsible for Federal income taxes; and petitioner had no medical or physical health problems during the relevant years.

The fifth factor is also neutral. As far as the record shows, petitioner appears to have complied with his Federal tax obligations after the IRS discovered the Administar scheme in 2004. Where the requesting spouse remains married to and files joint tax returns with the nonrequesting spouse, "this factor will be neutral if the joint returns are compliant with the tax laws." Hall, at \*41; Rev. Proc. 2013-34, sec. 4.03(2)(f)(ii), 2013-43 I.R.B. at 402.

The sixth factor favors petitioner slightly. While he received benefits from the understatements of income, these appear to have consisted of the payment of joint household expenses rather than "the benefits of a lavish lifestyle." Rev. Proc.

**[\*12]** 2013-34, sec. 4.03(2)(e). There is no evidence that he received "significant benefit (beyond normal support) from the unpaid income tax liability." Ibid.; see Pullins v. Commissioner, 136 T.C. 432, 451 (2011).

At trial the parties focused chiefly on the last factor enumerated above, namely, whether petitioner "knew or should have known" about the understatements of income on the 2000-2003 joint returns. Where the understatement arises from omitted income, we employ a "knowledge of the transaction" test. This test requires us to determine whether the requesting spouse was aware of the circumstances that gave rise to the understatement of income. See Bokum v. Commissioner, 94 T.C. 126, 146 (1990), aff'd, 992 F.2d 1132 (11th Cir. 1993).

We find that petitioner had actual knowledge of the circumstances that gave rise to the 2000-2003 understatements of income. He signed the Form 4549 agreeing that he was liable for a fraud penalty for each year. This indicates that he was aware contemporaneously of the 2000-2003 omissions from income. His only answer when questioned at trial about why he signed the Form 4549 was that Mrs. Williams told him she "would go to jail" if he did not sign the Form. For whatever reason, he signed the Form voluntarily, and he thereby admitted that he knew about the omissions from income.

**[*13]** Wholly apart from the Form 4549, other evidence establishes that petitioner knew or had reason to know about the omitted income. He personally prepared the couple's tax returns for 1987-1995 and invariably reported Mrs. Williams' wages as taxable income. He knew that Mrs. Williams continued to earn after 1995 the same wages she had earned from Mr. Bagdis previously; that her post-1996 compensation was being diverted into an Administar bank account; and that Mrs. Williams was writing checks on that account, as on an ordinary bank account, to defray their living expenses. He knew that the purpose of this arrangement was to eliminate taxes on her wages as well as to eliminate taxes on his compensation from Basement Doctor, so that the couple could take home more money and thus enhance their standard of living. This evidence makes clear that petitioner was aware of the circumstances that gave rise to the omissions from their 2000-2003 joint returns of both his and Mrs. Williams' income.

Petitioner testified that he thought Administar was paying taxes on the income diverted to it and that this relieved him and his wife of any tax liability. We found this testimony unpersuasive for several reasons. First, petitioner was not a credible witness. His testimony on this point was vague and conclusory. It had a rote quality and appeared to be from a script that he had memorized.

**[\*14]** Second, petitioner plainly had misgivings about the Administar scheme. For 1995 and 1996 he advised his wife against participating in it. He acquiesced in her doing so in 1997, but he declined to file a joint tax return with her for that year or for the next two years. Even though the Administar scheme sounded too good to be true, he made no meaningful inquiry into its legitimacy before agreeing to his wife's participation. And he made no meaningful inquiry before signing up for this scheme himself in 2001. He took no steps whatever to verify that Administar was actually filing tax returns and paying tax on the diverted income, as he claimed to believe. He thus evidenced willful blindness to the truth.

Revenue Procedure 2013-34, section 4.03(2), notes that the seven factors discussed above are "not intended to comprise an exclusive list" and that "[o]ther factors relevant to a specific claim for relief may also be taken into account." See Hall, at \*38 (noting that we consider the listed guideline factors "as well as any other relevant factors").[4] We conclude that an additional factor weighs against equitable relief here. The evidence established that Mrs. Williams did not sign up

---

[4]See, e.g., Torrisi v. Commissioner, T.C. Memo. 2011-235, 102 T.C.M. (CCH) 338, 346 (considering as additional factor weighing against relief that the taxpayer had depleted life insurance proceeds despite outstanding Federal income tax liability); Haigh v. Commissioner, T.C. Memo. 2009-140, 97 T.C.M. (CCH) 1794, 1804 (considering as additional factor that nonrequesting spouse had posted a bond that was used to satisfy the deficiency determined by the Commissioner).

**[*15]** for the Administar scheme until petitioner gave his approval and that she would not have participated in this scheme but for the fact that petitioner had given his approval. Petitioner, therefore, not only had actual knowledge of the omissions from income; he was also a contributing cause of those omissions by condoning Mrs. Williams' participation in Mr. Bagdis' scheme.

In sum, we find that petitioner had actual knowledge of the improper omissions of income from the 2000-2003 joint returns and that he was a significant contributing cause of those omissions. Weighing all the factors that we believe are relevant to petitioner's claim for relief, we conclude that he has failed to carry his burden of proving that he is entitled to equitable relief under section 6015(f).

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.