BURTON C. LAUER AND IRENE LAUER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lauer v. Commissioner
Docket No. 26555-89
United States Tax Court
T.C. Memo 1994-579; 1994 Tax Ct. Memo LEXIS 587; 68 T.C.M. (CCH) 1253; T.C.M. (RIA) 94579; November 28, 1994, Filed *587 Decision will be entered in accordance with the parties' stipulations, as described supra in note 2. Petitioners filed joint tax returns for 1977, 1978, and 1980. The parties have settled the deficiencies. Held: Petitioner wife is not entitled to innocent spouse treatment, because (1) she had reason to know of the understatements of tax, and (2) it is not inequitable to hold her liable for the deficiencies. Sec. 6013(e) I.R.C. 1954. For petitioners: James R. Zuckerman. For respondent: Peter J. Gavagan. CHABOT
CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax against petitioners as follows: Year
Deficiency
1977
$ 58,211
1978
31,098
1980
8,134
Respondent also determined that interest on the entire deficiencies for 1977 and 1978, and $ 7,508 of the 1980 deficiency, are to be computed under section 6621(c). [1]
*588 After concessions, [2] the issue for decision is whether petitioner Irene Lauer qualifies as an innocent spouse under section 6013(e) with respect to petitioners' 1977, 1978, and 1980 agreed-upon tax deficiencies. *589 FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioners Burton Lauer (hereinafter sometimes referred to as Burton) and Irene Lauer (hereinafter sometimes referred to as Irene), husband and wife, had their legal residence in Plainview, New York. Background
For the years in issue petitioners resided together as husband and wife, and continue to reside together as husband and wife. In their marriage, Irene devoted herself to managing the household and raising petitioners' children, while Burton managed the finances. Burton paid the bills and balanced the checkbook. Irene bought the groceries and most other household items. Irene did not question Burton about investment or business decisions. During the years in issue, Burton did not deliberately conceal his business activities or the family's financial affairs from Irene; however, he did not explain or otherwise discuss these activities with her. In particular, Burton did not tell Irene about his investments in Spring Properties (hereinafter sometimes referred to as Spring), *590 Fine Associates (hereinafter sometimes referred to as Fine), and a master recording (hereinafter sometimes referred to as Master Recording). When Irene's signature was needed on documents, Burton brought the documents home and asked Irene to sign them, and she signed them. At all times during the years in issue petitioners had a joint savings account and a joint checking account, and Irene had access to petitioners' checkbooks, passbooks, and other financial records. Petitioners have suffered severe physical ailments. Burton had several stomach operations since 1975. Irene had three operations in 1987 through 1989. Petitioners' medical insurance policy covers most, but not all, of their high medical expenses. In addition to their own physical problems, one of petitioners' sons has suffered psychological and associated physical complications that began in 1977, while he was in college. Petitioners have contributed some amount to the support of this son. Table 1 shows petitioners' deductible medical expenses, before reduction by the appropriate percentages of petitioners adjusted gross incomes (sec. 213(a) and (b)), for each of the years in issue. Table 1
Years
Gross Medical Expenses
1977
$ 11,700
1978
8,753
1980
7,973
*591 Business Activities
Burton is a master electrician by trade. From 1976 through 1989, Burton earned income from three different companies. From 1976 through 1979, he was president of Burmar Electrical Corp. (hereinafter sometimes referred to as Burmar). From 1979 or 1980 through 1985, he was a part owner of Amburr Electrical Corp. (hereinafter sometimes referred to as Amburr), which went out of business in 1985. Burmar and Amburr were in the electrical contracting business. From 1985 through 1989, Burton was general manager of Forest Electrical Corp. (hereinafter sometimes referred to as Forest) for the Nassau-Suffolk County, New York area. Burton retired from Forest for disability in 1989 because of his heart condition and other health problems. Burmar went out of business in 1979. In connection with Burmar's failure, an involuntary petition for bankruptcy was filed against Burton on April 1, 1980. On March 30, 1988, the Bankruptcy Court for the Eastern District of New York issued an order releasing Burton from all his dischargeable debts. Investment Activities and Tax Returns
In 1976, Burton bought limited partnership interests in Spring and Fine with cash *592 investments of $ 22,500 and $ 10,000, respectively. In 1977, Burton bought an interest in Master Recording. Pertinent information that petitioners reported on their tax returns, and the corresponding stipulated correct amounts, are shown on table 2 (for 1977), table 3 (for 1978), and table 4 (for 1980). Table 2
1977 Form 1040 Item Amount Stipulation Income received [1] (lines 8-20)
$ 163,801 $ 163,801 Tax liability (line 54)
-0- 20,541 Schedule C (line 13)
(94,000)
(73,146)
Master Recording
(94,000)
(73,146)
Schedule E (line 17 [2])
(47,138)
(12,759)
Spring
(29,688)
-0- Fine
( 4,691)
-0- Investment credit (line 41)
(18,239)
-0- Master Recording
(11,000)
-0- Carryover from 1976
( 7,239)
-0- Table 3
1978 Form 1040 Item Amount Stipulation Income received [1] (lines 8-20)
$ 113,969 $ 113,969 Tax liability (line 54)
-0- 31,098 Schedule C (line 13)
(60,433)
-0- Master Recording
(60,433)
-0- Schedule E (line 18)
(47,138)
(14,021)
Spring
(19,005)
-0- Fine
(14,112)
-0- Investment credit (line 41)
(24,905)
-0- Master Recording
( 6,666)
-0- Carryover from 1977
(18,239)
-0- *593 Table 4
1980 Form 1040 Item Amount Stipulation Income received [1] (lines 8-14)
$ 47,268 $ 55,560 Tax liability (line 54)
-0- 8,134 Schedule C (line 13)
(26,500)
-0- Master Recording
(26,500)
-0- Schedule E (line 18)
(9,108)
(9,108)
Investment credit (line 41)
(24,905)
-0- Carryover from 1979
Notwithstanding petitioners' substantial wage income (supra notes 1 to tables 2, 3, and 4), almost all of which was Burton's, petitioners did not pay any estimated tax or have any income tax withheld during any of the years in issue. Petitioners' tax returns for the years in issue were prepared by Burton's accountant. The deductions, credits, and income mentioned above are readily apparent on the Forms 1040. Irene did not look at these tax returns before signing them. Burton told Irene to sign the tax returns. Irene signed them. She did *594 not ask questions about them, and she did not interfere in their preparation or filing. Irene deliberately chose to be ignorant of the contents of the tax returns that she signed. Lifestyle
Petitioners bought their home in Plainview, New York, in 1955 as joint owners. Since 1956 they have continuously resided in this home. The home has been improved by additions three times. During the years in issue petitioners did not buy any furs or jewelry. They took occasional trips to Florida to visit relatives, and went on short vacations to upstate New York. They did not go abroad. In 1978, petitioners bought a new Ford Thunderbird for Irene to drive. This car was bought to replace a 2-to-3-month-old Cadillac demolished by petitioners' son. Burton had a company car available for his use at all times. During the years in issue, petitioners owned insurance policies on Burton's life; Irene was the beneficiary. The aggregate face value of these policies was about $ 230,000. From 1985 through 1989, Burton had about $ 100,000 per year of income. All of this income was used by Burton and Irene for living expenses. [3] On May 7, 1990, Burton was notified that a $ 248,102.68 civil *595 penalty was assessed against him. This penalty was assessed against him as a responsible person of Amburr, on account of Amburr's failure to pay "trust fund" employment taxes during 1982 through 1985. No part of the roughly $ 500,000 that Burton earned during 1985 through 1989 went to pay this responsible person assessment. Burton has been receiving Social Security disability payments of about $ 12,000 per year. Burton also received a disability pension from Forest of about $ 48,000 per year for a period ending in 1993. Burton receives another pension from Forest of $ 245 per month, and he owns an unvalued interest in Burmar's pension trust. Irene sometimes works about 8 hours a week, as a saleswoman in a dress shop. Irene has a small savings account. Burton does not have a bank account; all of his income is deposited into Irene's *596 checking account. Burton has a power of attorney for this checking account, and he signs all the checks and pays all the bills just as he always has. Because of the bankruptcy proceedings against Burton, Burton and Irene refinanced their mortgage in 1987 so that Irene could buy Burton's interest in their jointly owned home from the trustee in bankruptcy for $ 36,000. On January 5, 1987, the Bankruptcy Court approved this transfer of Burton's interest to Irene. The mortgage is in Irene's name, but all of the funds to pay the mortgage come from Burton. Irene had reason to know of the substantial understatements of tax on petitioners' joint tax returns for 1977, 1978, and 1980, when she signed these returns. It is not inequitable to hold Irene liable for the deficiencies in tax which resulted from these understatements. OPINION Section 6013(a) permits a husband and wife to elect to file a joint tax return. Together with section 1(a), this joint return option is a valuable privilege, which ordinarily operates to lower the tax liability for the income reported on the tax return. The price taxpayers must pay for this benefit is joint and several liability. Sec. 6013(d)(3); Stevens v. Commissioner, 872 F.2d 1499, 1503 (11th Cir. 1989), *597 affg. T.C. Memo. 1988-63; Bokum v. Commissioner, 94 T.C. 126, 151-152 (1990), affd. 992 F.2d 1132 (11th Cir. 1993); Pesch v. Commissioner, 78 T.C. 100, 129-130 (1982); Sonnenborn v. Commissioner, 57 T.C. 373, 380-381 (1971). Under section 6013(e), [4] however, a spouse may be relieved of this joint liability for a year if certain requirements are met for that year. The putative innocent spouse must show the following: (1) A joint income tax return was filed for the year (sec. 6013(e)(1)(A)); (2) on this tax return there is a substantial understatement of tax (sec. 6013(e)(1)(B)); (3) this substantial understatement is attributable to grossly erroneous items (sec. 6013(e)(1)(B)); (4) the grossly erroneous items are items of the other (the putative "guilty") spouse (sec. 6013(e)(1)(B)); (5) in signing the tax return the putative innocent spouse did not know, and had no reason to know, that there was the substantial understatement of tax (sec. 6013(e)(1)(C)); and (6) it is inequitable to hold the putative innocent spouse liable for the tax *598 deficiency that is attributable to the substantial understatement of tax. Sec. 6013(e)(1)(D). Also (as elements of item (3) supra), if any such item is a claim of a deduction, credit, or basis, then that claim has no basis in fact or law (sec. 6013(e)(2)(B)); and the tax liability for these items must exceed a certain percentage of the putative innocent spouse's income for the preadjustment year, in the instant case, 1988. Sec. 6103(e)(4). Hayman v. Commissioner, 992 F.2d 1256, 1260 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Bokum v. Commissioner, 94 T.C. at 138, 992 F.2d at 1133-1134. *599 The spouse seeking relief has the burden of proof on each of these requirements. Rule 142(a); [5]Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Bokum v. Commissioner, 94 T.C. at 138. Because the statute is phrased in the conjunctive, failure to prove any one of the requirements will prevent the taxpayer from qualifying for relief. Hayman v. Commissioner, 992 F.2d at 1260; Bokum v. Commissioner, 992 F.2d at 1134, 94 T.C. at 138. These factors, taken together with the well-established principle that exemptions from taxation are to be narrowly construed, place a significant burden on the taxpayer. United States v. Stewart, 311 U.S. 60, 63 (1940); Matthews v. Commissioner, 907 F.2d 1173, 1174, 1178 (D.C. Cir. 1990), *600 affg. 92 T.C. 351, 361 (1989); Bokum v. Commissioner, 94 T.C. at 155, and cases there cited. The parties agree that the following requirements have been satisfied: (1) Irene and Burton filed joint tax returns for each of the years in issue; (2) the understatements on the tax returns are substantial; (3) the substantial understatements are attributable to grossly erroneous items; (4) these items are items of Burton; and (5) in accordance with the requirements of section 6013(e)(4), the understatements exceed a certain percentage of Irene's 1988 income. Still in dispute is whether Irene satisfies the following requirements: (1) The deductions and investment credits claimed for the years in issue had no basis in fact or law; (2) in signing the tax returns Irene did not know, and had no reason to know, of the substantial understatements; and (3) it is inequitable to hold Irene liable for the deficiencies. Respondent contends that Irene is not an innocent spouse, because (1) the losses and credits claimed by petitioners from Spring, Fine, and Master Recording on their joint tax returns for 1977, 1978, and 1980 have some basis *601 in fact or law; (2) Irene knew or had reason to know of the substantial understatement of tax on their joint tax returns for the years in issue at the time she signed the tax returns; and (3) it is equitable to hold Irene liable for the deficiencies. Petitioners contend that Irene is an innocent spouse for 1977, 1978, and 1980 because (1) the deductions and credits attributable to Spring, Fine, and Master Recording claimed for these years had no basis in fact or law except to the extent allowed by respondent; (2) at the times of signing the joint tax returns for these years Irene did not know, and had no reason to know, there were substantial understatements of tax reported on the tax returns; (3) it is inequitable to hold Irene liable for the deficiencies. We agree with respondent that Irene had reason to know of the substantial understatements of tax, and that, taking into account all the facts and circumstances, it is not inequitable to hold her liable for the deficiencies. [6]
*602 Reason to Know
In Bokum v. Commissioner, 94 T.C. at 148, we set forth our position as follows: The standard to be applied in determining whether a putative innocent spouse has "reason to know," under section 6013(e)(1)(C) is whether "a reasonably prudent taxpayer under the circumstances of the spouse at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted." Stevens v. Commissioner, 872 F.2d at 1505 (fn. ref. omitted); Shea v. Commissioner, 780 F.2d 561, 566 (6th Cir. 1986), affg. on this issue and revg. on another issue a Memorandum Opinion of this Court. [T.C. Memo 1984-310.]This standard applies to deduction, etc., matters, as well as income matters. 872 F.2d at 1505 n.8.
The lack of knowledge, as contemplated by section 6013(e)(1)(C), is not a mere lack of understanding of the tax consequences of a deduction or credit. Hayman v. Commissioner, 992 F.2d at 1261; Stevens v. Commissioner, 872 F.2d at 1505 n.8; *603 Purcell v. Commissioner, 826 F.2d at 474, 86 T.C. at 237-238; McCoy v. Commissioner, 57 T.C. 732, 734 (1972). Importantly for the instant case, a taxpayer is not permitted to obtain the benefits of section 6013(e) by turning a blind eye to -- by preferring not to know of -- facts clearly within his or her grasp, or fully disclosed on a return that the taxpayer signed. Hayman v. Commissioner, 992 F.2d at 1262; Stevens v. Commissioner, 872 F.2d at 1507; Bokum v. Commissioner, 94 T.C. at 148. Burton did not tell Irene of his investments in Spring, Fine, and Master Recording at the time he made them, but neither was he evasive about these investments. Petitioners made a decision early in their marriage to divide the responsibilities of married life. Burton chose to attend to the financial affairs, and Irene chose to remain ignorant of them. It may be that, before signing the joint tax returns, Irene was unaware of the substantial understatements of tax on their joint tax returns. We consider whether Irene had reason to know of *604 the substantial understatements of tax, first for 1977 and 1978, then for 1980. 1977-1978
On signing the tax returns for 1977 and 1978, Irene had reason to know of their contents, because "Tax returns setting forth large deductions, such as tax shelter losses offsetting income from other sources and substantially reducing or eliminating the couple's tax liability, generally put a taxpayer on notice that there may be an understatement of tax liability." Hayman v. Commissioner, 992 F.2d at 1262. Petitioners reported significant income on their tax returns for 1977 and 1978, and for each of these years petitioners reported a zero tax liability because of large deductions and credits. See supra tables 2 and 3. Those two tax returns showed, on the front of the Forms 1040, an aggregate of $ 277,770 of income items. Those two tax returns showed, on the back of the Forms 1040 (the signature side), no tax liability at all. As tables 2 and 3 make plain, large deductions, and credits are shown right on the Forms 1040, and purport to wipe out tax liabilities on substantial amounts of income. Once Irene was put on notice by these considerable deductions *605 and credits, eliminating the couple's tax liability, she had a duty to inquire. Irene did not satisfy this duty and instead chose to blindly sign the returns, despite the fact that, as was pointed out in Stevens v. Commissioner, 872 F.2d at 1507, In signing a return, a taxpayer represents that the matters stated therein are true and correct to the best of his or her knowledge. That responsibility cannot be abdicated or evaded merely by ignoring returns that are suspect and which would prompt a reasonable person in the same position to investigate before signing them.
We believe that in Irene's position, a reasonably prudent taxpayer of ordinary intelligence would have inquired. We have found that Irene's ignorance of the large deductions and credits on her tax returns for the years in issue resulted from her deliberate choice not to review the tax returns, and merely to trust Burton. [7] It is settled, however, that spousal trust does not relieve a taxpayer's duty to inquire when a perusal of his or her tax return would indicate that such an inquiry is necessary. Stevens v. Commissioner, 872 F.2d at 1507. *606 In light of these facts and circumstances, we conclude, and we have found, that Irene had reason to know of the substantial understatements of tax for 1977 and 1978. The Court of Appeals for the Second Circuit (to which appeal lies in the present case) states that it approaches the lack of knowledge requirements of section 6013(e)(1)(C) somewhat differently. In Hayman, the Court of Appeals stated that it adopted the knowledge *607 standard articulated in Price v. Commissioner, 887 F.2d 959, 963 (9th Cir. 1989), revg. an Oral Opinion of this Court. "To satisfy the knowledge element of section 6013(e), a taxpayer must establish that 'she [or he] did not know and did not have reason to know that the deduction would give rise to a substantial understatement.'" Hayman v. Commissioner, 992 F.2d at 1261; Price v. Commissioner, 887 F.2d at 963. It may be that the approach stated by the Court of Appeals for the Second Circuit may lead to results different from those this Court would reach when the dispute focuses on actual knowledge of underlying transactions, such as in Bokum v. Commissioner, supra, and Purcell v. Commissioner, supra. However, when the issue is what the putative innocent spouse had reason to know, because of the tax return that spouse signed, we do not see any significant difference between the analysis adopted in Hayman v. Commissioner, supra, and our analysis. Applying the Hayman standards, we conclude that Irene is charged with knowledge of the contents *608 of the tax returns. The tax returns for 1977 and 1978 plainly show on the front and back of the Forms 1040 that large deductions offset substantial income from other sources and purport to eliminate petitioners' tax liabilities for these years. Under these standards Irene was put on notice that there might be substantial understatements of tax liability for 1977 and 1978. She had an obligation to inquire. Petitioners' testimony makes it plain, and we have found, that Burton did not deliberately conceal his business activities or the family's financial affairs from Irene. Irene should have asked. She preferred to remain ignorant about this. She is not permitted to gain tax exemption by choosing to be ignorant of the contents of her tax returns and shielding herself from guilty knowledge. We believe that under the standards set forth in Hayman, the Court of Appeals for the Second Circuit would conclude that Irene had reason to know of the substantial understatements of tax. Because the approach of the Court of Appeals for the Second Circuit does not require a result different from the one we reach, there is no occasion to consider the applicability of Golsen v. Commissioner, 54 T.C. 742 (1970), *609 affd. 445 F.2d 985 (10th Cir. 1971). We hold for respondent on this issue. 1980
Although evidence for 1980 is not as clearly in respondent's favor as the evidence for 1977 and 1978, we conclude that the same result obtains. If Irene had bothered to skim over the 1980 Form 1040 that she signed, then she would have noticed that the largest amount shown was $ 46,625 on line 8, for wages, etc.; the next largest was ($ 26,500) on line 13, for "Business income or (loss) (attach Schedule C)"; and the third largest was $ 24,905 on line 41, for "Investment credit (attach Form 3468)". All the other amounts on the Form 1040 were less than half the smallest of these three amounts. Irene's signature was a declaration "under penalties of perjury" that she had "examined this return, including accompanying schedules and statements". If she had skimmed (much less, "examined") the Schedule C to which line 13 of the Form 1040 referred her, then she would have seen that Burton was reporting that his "Records" business (line A) produced "0" gross receipts (line 1a) and "0" total income (line 5), and yet he had a $ 26,500 depreciation deduction (line 13), on account *610 of a $ 265,000 1977 investment in records (Sched. C-2, line 2). She should have enquired about the origin of this large number on the tax return. We do not know what answer she would have received if she had inquired, but we note that nothing in the record suggests that an inquiry by her would have been perilous to her. The important thing is that, as we stated in Bokum v. Commissioner, 94 T.C. at 148: [Irene] did not examine the tax return that she signed. She cannot obtain the benefits of section 6013(e) by simply turning a blind eye to -- by preferring not to know of -- facts fully disclosed on a tax return, of such a numerical magnitude as would reasonably put her on notice that further inquiry would need to be made. See the cases collected in Levin v. Commissioner, T.C. Memo. 1987-67. * * * [Irene] undertook responsibilities when she signed the * * * [1980] joint tax return. She cannot escape these responsibilities by simply ignoring the contents of this tax return. Stevens v. Commissioner, 872 F.2d at 1507.
Similarly, if Irene had skimmed the Form 3468 to which line *611 41 of the Form 1040 referred her, then she would have seen that Burton was reporting a $ 24,905 carryover of unused credits (line 7), with the following as the entire explanation: 1976 (7239.20) 1977 (11,000) 1978 (6,666) She should have inquired. The same analysis applies to the $ 24,905 investment credit as to the $ 26,500 business loss. We conclude that Irene had reason to know of the substantial understatement on the 1980 tax return. As discussed supra in our analysis of 1977 and 1978, we believe that the same result would obtain under the analysis set forth by the Court of Appeals for the Second Circuit in Hayman v. Commissioner, supra.
We hold for respondent on this issue. The Equities
Under section 6013(e)(1)(D), Irene is not entitled to innocent spouse treatment unless she can show that "taking into account all the facts and circumstances, it is inequitable to hold [her] * * * liable for the deficiency in tax". Among the facts and circumstances to be taken into account is whether Irene significantly benefited from the substantial understatement of tax. [8] *613 Hayman v. Commissioner, 992 F.2d at 1262; *612 Purcell v. Commissioner, 86 T.C. at 241. In the instant deduction and credit case, we look at whether Irene significantly benefited from the tax saving produced by the erroneous deductions and credits. Bokum v. Commissioner, 94 T.C. at 157. The tax saved by the erroneous deductions and credits amounted to almost $ 60,000.[9] Normal support is not a significant benefit. Whether the benefit is significant is to be measured by the circumstances of the parties. Hayman v. Commissioner, 992 F.2d at 1262; Purcell v. Commissioner, 86 T.C. at 242; sec. 1.6013-5(b), Income Tax Regs.
Irene did not receive furs or jewelry, or take extensive vacations; she did not lead a lavish lifestyle. She was, however, the beneficiary of substantial life insurance policies owned by petitioners during the years in issue, and she received a new car in 1978. [10] The record does not tell us much about petitioners' lifestyle. Petitioners, who have the burden of proof, must *614 bear the consequences of any failure of proof. Nothing in the record suggests that Burton placed the tax benefits out of Irene's reach or that he used the tax savings for expenditures that did not substantially benefit Irene. Adapting the comments of the Court of Appeals for the Second Circuit in Hayman v. Commissioner, 992 F.2d at 1263, we conclude that petitioners have failed to show that Irene did not maintain a higher standard of living because of the significant tax benefits resulting from the erroneous deductions and credits.
Further, Irene is not the type of spouse whom Congress sought to protect by the provisions of section 6013(e). Hayman v. Commissioner, 992 F.2d at 1263; *615 H. Rept. 98-432 (Part 2), 1501, 1502 (1984); see also sec. 1.6013-5(b), Income Tax Regs. Irene was never deceived. Petitioners continue to operate their marriage as a team, jointly sharing and dividing responsibilities. As we have found, Burton continues to bring in essentially all of the marital income; he places all his funds into Irene's checking account, writes the checks on the account to pay the bills under a power of attorney, and makes the payments on Irene's mortgage. Burton has not run off, to leave Irene to face the liability alone. On the contrary, it appears that petitioners have seen to it that Burton's significant receipts after the years in issue have gone into accounts in Irene's name, but used by Burton. One might fairly conclude that petitioners' current innocent spouse attempt is essentially just another shelter ploy; i.e., an attempt to shelter Burton's assets from collection of his tax liabilities. Based on these facts and circumstances, we conclude that it is not inequitable to hold both Irene and Burton to joint and several liability. On the contrary, it would be inequitable to allow petitioners now, to escape the obligations they should have satisfied *616 so long ago. Petitioners point to their illnesses, and that of their son, to suggest that it would be inequitable to hold Irene liable for the deficiencies. The evidence they have presented evokes our sympathy. But in the context of the tax provision with which we deal, we do not believe that these illnesses should diminish Irene's tax liabilities. Burton's liabilities are conceded. Burton's earnings go into Irene's accounts. We conclude, and we have found, that it would not be inequitable to hold Irene jointly and severally liable for the same liabilities. See Purificato v. Commissioner, 9 F.3d 290, 297 (3d Cir. 1993), affg. T.C. Memo. 1992-580. We hold for respondent on this issue. As a result, we hold that Irene fails to qualify for innocent spouse treatment under section 6013(e). To reflect the foregoing and the parties' settlement, Decision will be entered in accordance with the parties' stipulations, as described supra in note 2.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954, as in effect for the years in issue.↩
2. The parties have stipulated that the correct deficiencies are as follows: Year
Deficiency
1977
$ 20,541
1978
31,098
1980
8,134
They also have agreed that the amounts, listed below, of the above-stated deficiencies are substantial underpayments attributable to tax motivated transactions, and are subject to an increased rate of interest pursuant to section 6621(c). Year
Amount
1977
$ 10,330
1978
29,452
1980
7,508
The parties have stipulated that petitioner Irene Lauer is not an innocent spouse with regard to so much of the 1980 deficiency as results from the omission of $ 8,292 in constructive dividend income received by petitioners from Amburr Electrical Corporation. Also, respondent has abandoned the contention that a closing agreement executed in 1983 precludes petitioner Irene Lauer from claiming innocent spouse treatment with respect to certain of the items in dispute.↩
1. The stipulated $ 163,801 income received total includes wages ($ 154,391, line 8), interest ($ 5,195, line 9), dividends ($ 34 after $ 200 sec. 116 deduction, line 10c), State and local income tax refund ($ 329, line 11), capital gain ($ 2,652 after sec. 1202 deduction, line 14), and management fee ($ 1,200, line 20).↩
2. This should have been reported on line 18.↩
1. The stipulated income received total includes wages ($ 110,627, line 8), interest ($ 1,980, line 9), capital gain ($ 162 after sec. 1202 deduction, line 14), and management fee ($ 1,200, line 20). The parties stipulated to a total of $ 113,974. The $ 5 discrepancy between the stipulation and the stipulated tax return, on which our finding is based, is not material for disposition of the issue before us.↩
1. The stipulated $ 47,268 income received total includes wages($ 46,625, line 8), interest ($ 312, line 9), and capital gain ($ 331 after sec. 1202 deduction, line 14). The stipulated correct total income includes, in addition to the $ 47,268, $ 8,292 in constructive dividends from Amburr.↩
3. This finding is not intended to suggest that petitioners did or did not pay appropriate taxes for these years. The years 1985 through 1989 are not in issue in the instant case.↩
4. Sec. 6013 provides, in pertinent part, as follows: SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE. * * * (e) Spouse Relieved of Liability in Certain Cases. -- (1) In general. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,
then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. (2) Grossly erroneous items. -- For purposes of this subsection, the term "grossly erroneous items" means, with respect to any spouse -- (A) any item of gross income attributable to such spouse which is omitted from gross income, and (B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law.
Although the years before us are 1977, 1978, and 1980, we apply the statute as amended in 1984, because section 424(a) of the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 494, 801-803, amended section 6013(e)↩ retroactively to all open years to which the Internal Revenue Code of 1954 applies.
5. Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.↩
6. As a result, we need not consider whether the deductions and credits claimed by petitioners on their tax returns had a basis in fact or law. Bokum v. Commissioner, 992 F.2d 1132, 1134 (11th Cir. 1993), affg. 94 T.C. 126, (1990); Stevens v. Commissioner, 872 F.2d 1499, 1507-1508 (11th Cir. 1989), affg. T.C. Memo. 1988-63↩.
7. As Irene put it in her direct examination, when being asked if Burton was ever evasive or deceitful in any way in discussing business affairs with her, -- I never knew anything, and I don't think I wanted to know anything.
On cross-examination, respondent's counsel showed petitioners' 1977 and 1978 tax returns to Irene and asked her whether she ever questioned how it was that the tax returns showed large amounts of income, but no tax liabilities. Q * * * You never questioned it? A I never questioned it. Q You just preferred to be ignorant about it? A That's how it was.↩
8. As we pointed out supra in the last paragraph of note 4, sec. 6013(e)↩ was revised retroactively by sec. 424(a) of DEFRA. The 1984 amendments removed from the statute the language about significant benefit. It is clear, however, from the legislative history that the rewording was not intended to remove from consideration whether the relief-seeking spouse benefited from the understatement of tax. H. Rept. 98-432 (Part 2), 1501, 1502 (1984). The Conference Committee agreement follows the House bill with two modifications, which are not applicable to this issue. H. Conf. Rept. 98-861, at 1119-1120 (1984), 1984-3 C.B. (Vol. 2) 1, 373-374.
9. To ascertain the amount of tax savings and subsequent benefit to Irene for 1980, we applied the stacking method (1) used by the I.R.S. in computations, and (2) most favorable to an innocent spouse. See 4 Audit, Internal Revenue Manual (CCH), sec. 45(11)0, at 8219; 4 Audit, Internal Revenue Manual (CCH), sec. 45(11)0), Exh. 45(11)0-6, at 8227-3; 4 Audit, Internal Revenue Manual (CCH), sec. 45(11)0), Exh. 45(11)0-7, at 8228; 8 Appeals, Internal Revenue Manual (CCH), sec. 8116, at 25,573-129.1. It appears that, applying this method, all of the 1980 deficiency would be attributable to the innocent spouse items, not withstanding the agreement that the $ 8,292 constructive dividend adjustment is not an innocent spouse item.↩
10. The Cadillac that was demolished had been bought new about 2 to 3 months before it was demolished. The record does not show, but we suspect, that insurance on the Cadillac may have largely paid for the Thunderbird. Net, as between the Cadillac and the Thunderbird, petitioners paid for one new car for Irene.↩