WILLIAM P. AND DONNA L. COUSINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cousins v. Commissioner
Docket No. 26400-87
United States Tax Court
T.C. Memo 1995-129; 1995 Tax Ct. Memo LEXIS 126; 69 T.C.M. (CCH) 2241; March 27, 1995, Filed *126 Decision will be entered for respondent, except for petitioner William Cousins' liability as to fraud for 1981. For petitioners: Sidney A. Soltz. For respondent: Kathleen L. Donohue. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies in and an addition to petitioners' Federal income tax as follows: Addition to Tax Year
Deficiency
Sec. 6661 1979
$ 37,390
-0-
1980
78,300
-0-
1981
66,626
-0-
1982
177,096
$ 44,274
Respondent determined additions to tax for petitioner William Cousins for fraud as follows: Additions to Tax Year
Sec. 6653(b)
Sec. 6653(b)(1)
Sec. 6653(b)(2)
1979
$ 18,695
-0- -0-
1980
39,150
-0- -0-
1981
34,493
-0- -0-
1982
-0-
$ 92,452
[1] Petitioners concede that petitioner William Cousins is collaterally estopped from denying liability for the additions to tax for fraud for 1979, 1980, and 1982. Respondent did not determine that petitioner Donna Cousins was liable for fraud. The issues for decision are: 1. Whether petitioners are liable for: (a) Deficiencies in income tax for 1979 to *127 1982 as determined by respondent, and (b) the addition to tax for substantial understatement of tax for 1982 under section 6661. We hold that they are. 2. Whether petitioner William Cousins is liable for the addition to tax for fraud for 1981 under section 6653(b). We hold that he is not. 3. Whether petitioner Donna Cousins qualifies as an innocent spouse for 1979 to 1982 under section 6013(e). We hold that she does not. References to petitioner in the singular are to Donna Cousins. Section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioners
Petitioners resided in Gainesville, Florida, when they filed the petition. In 1964, when she was 16 years old, petitioner quit high school and married William Cousins (Cousins). Petitioners had four children before petitioner was 23 years old. Petitioner did not work outside of the home from 1964 until 1983. During those years, her primary activity was raising the children. She had no bookkeeping or accounting experience before or during *128 the years in issue. Petitioner received a high school equivalency diploma in 1980 or 1981 and a nursing certificate in 1984. Petitioner was employed as a nurse at the time of trial. Petitioners remained married during the years at issue. Petitioners separated in late 1985, after 21 years of marriage. Petitioner filed for divorce soon after they separated. Their divorce became final in May 1989. During the years in issue, Cousins was an officer and shareholder of Charter Air Center, Inc. (Charter Air), and Sunny South Aircraft Service, Inc. (Sunny South), both of which were closely held corporations. Cousins received taxable income from Charter Air and Sunny South during the years in issue. In 1986 Cousins was charged with conspiracy to import illegal drugs from 1979 to 1984, and intentional evasion of income taxes in 1979, 1980, and 1982. Cousins was convicted of all charges and sentenced to 10 years in prison. Petitioner was not charged with conspiracy to import illegal drugs or tax evasion. The record does not indicate when petitioner learned of Cousins' illegal drug activity. Petitioners' income was $ 124,912 in 1979, $ 243,465 in 1980, $ 198,299 in 1981, and $ 508,584 *129 in 1982. 2. Financial Relationship Between Petitioners
Petitioner had two accounts at the Barnett Bank. Cousins had accounts at the First City Bank of Gainesville, the Atlantic Bank, and the Landmark First National Bank. Petitioners had a joint bank account at the Dania Bank (f.k.a. the Caribank). Checks were written on the Dania Bank account payable to and endorsed by petitioner. Petitioner endorsed and deposited some checks into her accounts, but Cousins or his secretary deposited most of the checks into petitioner's accounts. Petitioner was named as corporate secretary in the articles of incorporation of Charter Leasing Corp. However, she did not make what is purportedly her signature on the articles of incorporation for Charter Leasing Corp., and she was not employed by it or any of Cousins' other businesses. Petitioner did not sign checks on Cousins' business bank accounts. Petitioner visited Cousins' place of business fewer than five times during their more than 21 years of marriage. Charter Leasing Corp. transferred $ 6,500 and Sunny South transferred $ 2,500 to petitioner in 1982. The record does not show whether petitioner and Cousins discussed his business *130 activity. Petitioner's purported signature appears on a mortgage deed dated February 19, 1980, to John H. Bratley, Jr., although she did not sign it. Similarly, petitioner did not sign a modification of note and mortgage dated July 24, 1980, to George W. English, Jr., although her purported signature appears on it. Checks totaling the following amounts were written to and endorsed by petitioner during the years in issue: Year
Checks
1979
$ 5,420.00
1980
18,828.88
1981
34,350.00
1982
40,300.00
3. Petitioners' Tax Returns
Petitioners filed joint tax returns for the years 1977 to 1982. Petitioner signed the 1981 and 1982 returns. Her purported signature appears on the 1979 and 1980 returns although she did not sign them. The record does not indicate whether petitioner saw the 1979 and 1980 returns before they were filed. Tim Kaskey (Kaskey), a certified public accountant, prepared petitioners' returns for the years in issue. Petitioner took no part in preparing those returns. Kaskey signed the returns as the preparer. Petitioners reported gross income, adjusted gross income, and itemized deductions and claimed refunds totaling $ 28,838 for 1979 to *131 1982 as follows: Adjusted
Itemized
Year
Gross Income
Gross Income
Deductions
Refund
1979
$ 39,268
$ 29,670
$ 10,567
$ 10,754
1980
69,068
58,280
45,546
9,945
1981
61,538
57,956
35,412
6,253
1982
69,422
69,422
68,284
1,886
Petitioner did not endorse the 1979 refund check although her name is signed on the back of the check. Petitioners underreported their income by $ 85,644 for 1979, $ 174,397 for 1980, $ 142,566 for 1981, and $ 414,990 for 1982. 4. Petitioners' Standard of Living
In 1979, petitioners sold their residence for $ 160,000, and rolled over the $ 43,446 gain into a home in Fort Lauderdale, Florida, that they bought for $ 500,000. They sold that home for $ 700,000 in 1982, and took back a first mortgage of $ 475,000 from the buyers. They also owned a rental home and a 10-acre tract of land that they sold for a $ 59,569 gain in 1982. The mortgage on the home in which petitioners were living when they separated in 1985 was foreclosed. Petitioners spent more than $ 81,000 for furniture and household items in 1982. Petitioner bought from $ 6,155.13 to $ 12,758.61 of the furniture. Petitioners bought an airplane for $ *132 85,000 in November 1982. They financed the purchase of the plane with a loan from the First City Bank of Gainesville. Petitioners signed a financial statement, dated July 1, 1982, prepared for the First City Bank of Gainesville, which stated that petitioners had an annual income of $ 125,000 and a net worth of $ 2,306,749. The financial statement included the following assets: (a) $ 1,266,749 in stocks and securities in Cousins' businesses; (b) $ 470,000 in real estate; (c) $ 75,000 in automobiles; (d) $ 150,000 in personal property; (e) $ 485,000 in accounts receivable (including a $ 475,000 first mortgage on the sale of their Fort Lauderdale home); and (f) $ 160,000 cash. Cousins bought a Mercedes-Benz automobile for petitioner at a time not specified in the record. He returned it after several months because he could not pay for it. Petitioners did not have a cash hoard before the years in issue. OPINION 1. Deficiencies in Income Tax and Addition to Tax for Substantial Understatement of Tax Under Section 6661
Respondent used the bank deposits and cash expenditures method to determine that petitioners underreported income by $ 85,644 for 1979, $ 174,397 for 1980, *133 $ 142,566 for 1981, and $ 414,990 for 1982 and that petitioners were liable for deficiencies in income tax. Respondent determined that petitioners are liable for an addition to tax for substantial understatement of income tax under section 6661 for 1982. These determinations are presumed to be correct, and petitioners bear the burden of proving otherwise. Rule 142(a); Coninck v. Commissioner, 100 T.C. 495, 498-499 (1993). Petitioners offered no evidence to show that respondent's determination was incorrect. Cousins failed to appear for trial. We hold that petitioners are liable for the deficiencies and addition to tax under section 6661. 2. Additions to Tax for Fraud Under Section 6653(b)
Respondent determined that Cousins is liable for additions to tax for fraud for 1979 to 1982. Petitioners concede that Cousins is collaterally estopped from contesting fraud for 1979, 1980, and 1982. We must decide whether Cousins is liable for additions to tax for fraud for 1981. Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). Respondent must establish that: (a) An underpayment exists for the *134 year in issue, and (b) some part of the underpayment is due to fraud. Sec. 6653(b); Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989). Fraud may be inferred from any conduct the effect of which is to mislead or conceal, Spies v. United States, 317 U.S. 492, 499 (1943), or otherwise prevent the collection of taxes, Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81, or where an entire course of conduct establishes the necessary intent, Patton v. Commissioner, 799 F.2d 166, 171 (5th Cir. 1986), affg. T.C. Memo. 1985-148; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). A taxpayer's failure to disprove the Commissioner's determination of a deficiency does not establish that the taxpayer committed fraud. Habersham-Bey v. Commissioner, 78 T.C. 304, 312 (1982); Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). *135 Respondent used the bank deposits and cash expenditures method to determine petitioners' unreported income for the years in issue. Respondent alleged that the likely source of Cousins' unreported taxable income was illegal drug importation activities, and respondent reasonably investigated leads negating possible sources of nontaxable income. We find that Cousins' source of unreported taxable income is as alleged by respondent. See Holland v. United States, 348 U.S. 121, 132-138 (1954); Smith v. Commissioner, 91 T.C. 1049, 1059 (1988), affd. 926 F.2d 1470 (6th Cir. 1991). Cousins had unreported income from his illegal drug activity in 1981, and he failed to appear at trial. His counsel appeared on his behalf, however. Cousins' failure to appear for trial does not, by itself, establish fraud. Smith v. Commissioner, supra.The record does not establish fraud by clear and convincing evidence. We hold that respondent has not proved by clear and convincing evidence that Cousins is liable for fraud for 1981. 3. Whether Petitioner Qualifies as an Innocent *136 Spouse
a. Background
We next decide whether petitioner qualifies as an innocent spouse under section 6013(e). Spouses who file joint tax returns are jointly and severally liable for the tax. Sec. 6013(d)(3). Petitioner argues that she is not liable for the deficiencies and addition to tax for substantial understatement of income tax because she is an innocent spouse under section 6013(e). To qualify as an innocent spouse, petitioner must prove that: (i) She filed a joint return for the years in issue; (ii) there is a substantial understatement of income tax attributable to grossly erroneous items of the other spouse on the return; (iii) she did not know or have reason to know of the substantial understatement when she signed the return; and (iv) it would be inequitable to hold her liable for the deficiency attributable to the substantial understatement. Sec. 6013(e)(1). Failure to meet any of these requirements precludes a taxpayer from qualifying as an innocent spouse. Sec. 6013(e)(1); Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Shea v. Commissioner, 780 F.2d 561, 565 (6th Cir. 1986), *137 affg. in part and revg. in part T.C. Memo. 1984-310. The innocent spouse exception is construed in view of the congressional purpose of protecting innocent taxpayers from injustice. Bokum v. Commissioner, 992 F.2d 1132, 1134 (11th Cir. 1993), affg. on other grounds 94 T.C. 126 (1990); [1]Sanders v. United States, 509 F.2d 162, 166-167 (5th Cir. 1975). Respondent concedes that petitioner meets the first two requirements to qualify as an innocent spouse under section 6013(e), but not whether she knew or had reason to know of the understatements when she signed the returns *138 and whether it is inequitable to hold her liable. b. Knowledge or Reason To Know of the Substantial Understatements
To qualify as an innocent spouse, petitioner must show that she did not know or have reason to know of the understatements when she signed the returns. Sec. 6013(e)(1)(C). The parties dispute whether petitioner meets this requirement. We need not decide whether petitioner had actual knowledge of the understatements when she signed the returns because we are not convinced that she lacked reason to know of the omitted income. To decide whether petitioner had reason to know of the understatements for the years in issue, we consider whether, at the time she signed the returns, a reasonable person in her circumstances could be expected to know that the tax liability was erroneous or that further investigation was warranted. Kistner v. Commissioner, 18 F.3d 1521, 1525 (11th Cir. 1994), revg. and remanding T.C. Memo. 1991-463; Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63. The test establishes a duty of *139 inquiry on the part of the alleged innocent spouse. Kistner v. Commissioner, supra; Stevens v. Commissioner, supra.Taxpayers who sign their tax returns are presumed to have knowledge of the contents of the returns. Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Terzian v. Commissioner, 72 T.C. 1164, 1171 (1979). Courts have considered several factors in deciding whether a taxpayer had reason to know of a substantial understatement, including: (i) the alleged innocent spouse's level of education, (ii) his or her involvement in the family's business and financial affairs, (iii) the presence of lavish or unusual expenditures or any large unexplained increase in the family's standard of living, and (iv) the allegedly culpable spouse's evasiveness and deceit about the family's finances. Kistner v. Commissioner, supra; Stevens v. Commissioner, supra; Flynn v. Commissioner, 93 T.C. 355, 365-366 (1989). *140 (i) Education
Petitioner dropped out of high school in 1964 when she was 16 years old. She has had no accounting or tax training. She received a high school equivalency diploma during the years at issue and a nursing certificate in 1984. This factor favors petitioner. (ii) Business and Financial Involvement
Petitioner could write checks on the joint account she and Cousins had at the Dania Bank. Petitioner was listed as corporate secretary of Charter Leasing Corp., but she was not employed by Cousins' businesses. She did not sign checks on his business bank accounts. Although her purported signature appears on the articles of incorporation for Charter Leasing Corp., petitioner did not sign the document. She rarely visited Cousins' office. Cousins and his secretary deposited most of the checks deposited into petitioner's bank accounts. Petitioner did not help prepare the returns for any of the years in issue. Petitioner was not charged with conspiring to import illegal drugs with Cousins. She was a homemaker raising four children between ages 10 to 17 during the years in issue. However, petitioner did not testify about her knowledge of Cousins' businesses or *141 about who handled the family finances. The fact that petitioner was a homemaker does not, without more, establish that she had no reason to know of the omitted income. Hayman v. Commissioner, supra at 1261-1262; Stevens v. Commissioner, supra at 1505-1506. Petitioner relied too much on her status as a housewife and did not explain enough about her involvement in the family's finances to convince us that she did not have reason to know of the understatements of income. The record does not show what petitioner knew or did not know about Cousins' businesses or who handled the family finances. This factor favors respondent. (iii) Lavish or Unusual Expenditures
Petitioners bought a $ 500,000 house in 1979, lived in it during the years in issue, and sold it for $ 700,000 in 1982. In 1982, they spent more than $ 81,000 to furnish the house. Petitioners borrowed money to buy an $ 85,000 airplane in 1982. Petitioner signed a financial statement in 1982 in which petitioners listed assets of more than $ 2 million. Petitioner did not testify about the financial statement. The financial statement stated that *142 petitioners' income was $ 125,000, yet they reported only $ 69,422 on their 1982 return. If petitioner had reviewed the returns for the years at issue, she would have realized that they had underreported their income. Cousins or his businesses deposited a significant amount of money ($ 5,420 in 1979, $ 18,828.88 in 1980, $ 34,350 in 1981, and $ 40,300 in 1982) into petitioner's checking accounts during the years in issue. In Kistner v. Commissioner, supra, the Court of Appeals for the Eleventh Circuit held that the luxurious lifestyle that the taxpayer lived while married did not show that she had reason to know of substantial understatements of income by her former husband because, although the expenditures indicated affluence, they did not show a sudden improvement or change in their previously lavish lifestyle. Petitioner did not introduce evidence to show whether there was a sudden improvement in petitioners' lifestyle during the years in issue. In addition, there is, unlike Kistner v. Commissioner, supra, indication that petitioners were living far beyond their income as reported on their returns. Large *143 deductions, particularly those that completely or substantially eliminate taxable income, may give a taxpayer reason to know that an understatement exists. Hayman v. Commissioner, 992 F.2d at 1262. Petitioners claimed deductions ranging from 36 percent to 98 percent of their reported income in the years at issue, and also claimed refunds for each of those years. If petitioner had reviewed her and Cousins' tax returns, she would have realized that they had underreported their income. Petitioners did not have a cash hoard that could have been used to pay for their affluent lifestyle. This factor favors respondent. (iv) Evasiveness or Deceit by Other Spouse
Perceived evasiveness of the taxpayer's spouse may trigger a duty to inquire. Stevens v. Commissioner, 872 F.2d at 1505; Park v. Commissioner, T.C. Memo. 1993-252, affd. 25 F.3d 1289 (5th Cir. 1994) (evasive husband should have prompted questioning). Good communication between the spouses may support a finding that the taxpayer was aware of the understatement. See Hayman v. Commissioner, supra at 1262-1263 *144 (taxpayer's husband's lack of deceptiveness supports conclusion that taxpayer knew or should have known of the understatement). This assumes that a nonevasive spouse is more likely than an evasive spouse to communicate relevant knowledge to his or her spouse. Conversely, a taxpayer who is unaware of being misled by the other spouse may not have a reason to know of the understatement or a duty to inquire as to the possibility of an understatement. Guth v. Commissioner, 897 F.2d 441, 444 (9th Cir. 1990), affg. T.C. Memo. 1987-522. Petitioner offered little evidence to show whether Cousins was deceitful or evasive concerning the family finances. Petitioner did not testify about whether Cousins communicated with her about his business or the family finances, other than to say that Cousins did not want her to come to his office. Similarly, petitioner did not say whether or not she questioned Cousins about his business or about how petitioners paid for their lifestyle. An alleged innocent spouse cannot close his or her eyes to facts that might give reason to know of the understatement. Terzian v. Commissioner, 72 T.C. at 1170; *145 Mysse v. Commissioner, 57 T.C. 680, 699 (1972). Petitioner failed to show that she satisfied her duty to inquire. Petitioner testified that her purported signature on the 1979 and 1980 returns, [2] the 1979 refund check, some checks, and other documents was not made by her. Petitioner argues that this shows that Cousins was deceitful. We agree. However, this does not show that she lacked reason to inquire about their finances or income tax returns. Petitioner should have realized that she had not signed tax returns for 1979 and 1980 and asked Cousins about them. This factor favors respondent. *146 Petitioner did not testify about what she knew about Cousins' businesses, who handled the family finances, whether she had reason to believe petitioners had more income than they reported, or whether Cousins communicated with her about his business dealings. She did not adequately address evidence in the record that should have made her realize that she and Cousins had significantly more income than reported, such as their 1982 net worth statement, itemized deductions almost equal to their reported income, furniture purchases exceeding their reported income, purchase of an airplane, and their 1979 purchase of a home for more than three times the sale price of their former residence. In light of these strong clues that should have alerted her to the fact that their income was significantly more than reported, petitioner did not convince us that she did not have reason to know of the substantial understatements in the years in issue. We hold that petitioner does not qualify as an innocent spouse because she knew or had reason to know of the understatements. c. Inequitable To Hold Petitioner Liable
The taxpayer asserting innocent spouse status must prove that, taking into *147 account all the facts and circumstances, it is inequitable to hold her or him liable for the deficiency. Sec. 6013(e)(1)(D). In assessing the equity in holding a spouse liable, we consider: (i) Whether the spouse claiming innocent spouse status significantly benefited from the grossly erroneous items attributable to the other spouse, Estate of Krock v. Commissioner, 93 T.C. 672, 677 (1989); Belk v. Commissioner, 93 T.C. 434, 440 (1989); Flynn v. Commissioner, 93 T.C. at 367; (ii) whether the spouse seeking relief has been deserted by, or divorced or separated from, the other spouse, sec. 1.6013-5(b), Income Tax Regs.; and (iii) probable future hardships that would be imposed on the spouse seeking relief if such relief were denied, Sanders v. United States, 509 F.2d at 171 n.16; Dakil v. United States, 496 F.2d 431, 433 (10th Cir. 1974). The statute no longer requires that the purported innocent spouse receive a significant benefit, but it continues to be a factor. Erdahl v. Commissioner, 930 F.2d 585, 589 n.3 (8th Cir. 1990), *148 revg. and remanding T.C. Memo. 1990-101; Estate of Krock v. Commissioner, supra at 678. Normal support, or support similar to that enjoyed in earlier years, is not considered to be a significant benefit. Sanders v. United States, 509 F.2d at 168; Belk v. Commissioner, supra at 440; Flynn v. Commissioner, supra at 367. We believe that petitioner benefited from the omitted income. Petitioner enjoyed the benefits of the understatements during the years in issue. As discussed, petitioners lived an affluent lifestyle that included a $ 500,000 to $ 700,000 furnished home. Petitioners purchased an airplane in 1982. Petitioners paid no taxes from 1979 to 1982. As a result of the understatements, they received refunds totaling $ 28,838. We believe that petitioner fully shared in the benefits of the tax savings from the omitted income and that the understatement enabled petitioner to maintain a standard of living that she would not have enjoyed otherwise. See Scarafile v. Commissioner, T.C. Memo. 1991-512. *149 We find that petitioner fails the requirements of section 6013(e)(1)(C) and (D). Consequently, we hold that she is not entitled to relief as an innocent spouse under section 6013(e). To reflect the foregoing, Decision will be entered for respondent, except for petitioner William Cousins' liability as to fraud for 1981. Footnotes
1. Fifty percent of the interest due on $ 184,904.↩
1. The issue decided on appeal in Bokum was whether it would be inequitable to hold the taxpayer liable for the understatement. The Tax Court's holding that the taxpayer knew or had reason to know of the understatement was not addressed on appeal. Bokum v. Commissioner, 992 F.2d 1132↩ (11th Cir. 1993).
2. Petitioner testified that she did not sign the 1979 and 1980 tax returns. However, she conceded on brief the issue of whether joint returns (under sec. 6013(d)(3)) were filed for petitioner and Cousins for 1979 and 1980. A taxpayer is bound by a joint return which he or she did not sign if the taxpayer intended to file a joint return and enjoy the resulting benefits. Federbush v. Commissioner, 34 T.C. 740, 757-758 (1960), affd. 325 F.2d 1 (2d Cir. 1963). Proof of such an intention can be found if the taxpayer had a history of filing joint returns and if the taxpayer relied on his or her spouse with respect to their financial affairs. Estate of Campbell v. Commissioner, 56 T.C. 1, 12-13↩ (1971).