T.C. Memo. 1997-534


UNITED STATES TAX COURT


BETSY O. MUHN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17391-96.                  Filed December 1, 1997.


<u>Ron Lewis</u>, for petitioner.

<u>Susan E. Seabrook</u>, for respondent.


MEMORANDUM OPINION


JACOBS, <u>Judge</u>:  Respondent determined a $14,733 deficiency in petitioner's Federal income tax for 1991, an addition to tax for failure to timely file a 1991 Federal income tax return pursuant to section 6651(a)(1), and an addition to tax for failure to pay estimated taxes pursuant to section 6654.

The sole issue for decision is whether petitioner is entitled to innocent spouse relief pursuant to section 6013(e).  Petitioner concedes that respondent's determinations in the notice of deficiency are otherwise correct.

Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the year in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar figures are rounded.

## General Findings

This case was submitted with fully stipulated facts under Rule 122.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.

At the time the petition was filed, petitioner resided in Ruidoso, New Mexico.  She has been married to her husband, John N. Muhn, for approximately 42 years.

## Background

Petitioner attended the University of Texas at El Paso and Southern Methodist University for 2 years.  She did not take any accounting or business classes while attending college.

Mr. Muhn had been an accountant for Atlantic Richfield Corp. before retiring on November 1, 1984.  He took care of all of the family's financial matters.

During 1991, petitioner was employed by Home Health Services and briefly by American Greetings; Mr. Muhn was employed as a

bookkeeper for the Ruidoso Valley Chamber of Commerce. Payment for Mr. Muhn's services during 1991 was not made directly to him but rather at Mr. Muhn's direction by Ruidoso Valley Chamber of Commerce checks made payable to PFA Enterprises. These checks were deposited into petitioner's account No. 20014362 at the First Federal Savings Bank of New Mexico branch in Roswell, New Mexico.

PFA Enterprises

On March 1, 1989, PFA Enterprises (PFA or the trust), an unincorporated Massachusetts business trust,[1] was created by Herbert Bates. Mr. Bates was paid $3,000 for his services.

Mr. Bates appointed Peer Financial Group as PFA's first trustee to administer the trust. (David Smith was the agent for Peer Financial Group; he has had no connection with PFA Enterprises since its inception and has executed no documents on its behalf.) Mr. Bates also appointed an interim beneficiary, First Surety Bank, Ltd. (First Surety Bank) of the Marshall Islands, to hold PFA's certificates for the trust's beneficiaries (namely, Mr. Muhn, petitioner, their son John Scott Muhn (Scott Muhn), and Karen Kopp, Scott Muhn's then fiancée). Mr. Bates has had no connection with

---

[1] A Massachusetts business trust is one in which property is conveyed to trustees and held and managed for the benefit of certificate holders. 12A C.J.S., Business Trusts, sec. 2 (1980). Under Federal tax law, these entities may be treated as corporations rather than trusts. Sec. 301.7701-4(b), Proced. & Admin. Regs.

The parties have stipulated that PFA Enterprises should be disregarded for tax purposes because it lacked economic substance.

PFA since its inception. No trust certificates have ever been received by any of PFA's named beneficiaries.

Petitioner has never met Mr. Bates or Mr. Smith, nor does she have any knowledge of Peer Financial Group or First Surety Bank. Petitioner was not involved in the operation of PFA, although she executed a number of documents relating to the trust at the direction of her husband.

In June 1989, petitioner and her husband conveyed title to both their residence and a cabin (each of which was subject to a preexisting mortgage) to PFA. PFA did not assume the obligation under either of the mortgages. After the transfer, petitioner and her husband continued to reside in the house transferred to PFA; their son lived in the cabin. Neither petitioner, her husband, nor their son paid rent to PFA.

On June 21, 1989, PFA (by or through Mr. Muhn and Scott Muhn acting as PFA trustees) purchased Quick Print Express, a printing business, for approximately $80,000. Mr. Muhn and Scott Muhn paid the sellers approximately $30,000 as a downpayment; the $50,000 balance was payable in 120 monthly installments of $660.75 each. Mr. Muhn and Scott Muhn obtained financing for this acquisition by listing as their assets the real property transferred to PFA by petitioner and her husband. (Petitioner believed she was transferring her interest in her home and cabin to the trust in order to assist her son in obtaining financing for the printing

business.)   The $50,000 balance was secured by the business' assets.

In June 1990, PFA purchased Ruidoso Printing Co. and executed a $95,050 note to First National Bank of Ruidoso (which was cosigned by Mr. Muhn and Scott Muhn and renewed in August 1991) for the acquisition.   The note was secured by the business' assets. PFA executed a lease, cosigned by Mr. Muhn and Scott Muhn, of the business premises in which Ruidoso Printing Co. operated.   In July 1990 and May 1991, Mr. Muhn and/or Scott Muhn executed leases for a desktop publishing system and photocopier for the operation of the printing businesses.

During all relevant times, Scott Muhn managed the printing businesses.   Petitioner was never employed by PFA.   Nor did she ever have signing authority with respect to its checking accounts.

Personal Financial Affairs

Petitioner and Mr. Muhn maintained two joint bank accounts with First Federal Savings Bank.   With respect to one account (account No. 20014362 at the First Federal Savings Bank of New Mexico), preauthorized withdrawals were made in 1991 totaling $12,246 for the mortgage on the residential home, $2,990 for petitioner's personal loan on a 1984 Ford truck, and $1,403 for petitioner's personal loan on a fifth wheel travel trailer.   With respect to the second account (account No. 20020412 at the First Federal Savings Bank of New Mexico), 355 checks totaling $30,596

were written during 1991; petitioner signed only five of those checks totaling $135.

Federal Tax Return

On June 3, 1993, petitioner and Mr. Muhn filed a 1991 joint Federal income tax return, reporting an adjusted gross income of $25,880. Petitioner did not review the delinquent return even though at the time the return was filed, Mr. Muhn was under examination with regard to his 1991 tax liability and petitioner was aware of the tax examination.

Notice of Deficiency

In the notice of deficiency, respondent determined a tax deficiency of $14,733. For the most part, the deficiency was attributable to $41,665 of unreported income (1) from Mr. Muhn's work for the Ruidoso Valley Chamber of Commerce ($14,019), and (2) the net income of PFA ($27,646).

## Discussion

The sole issue for decision is whether petitioner qualifies for innocent spouse relief for the 1991 deficiency and additions.

Spouses who file a joint income tax return generally are jointly and severally liable for its accuracy and the tax due, including any additional taxes, interest, or penalties determined on audit of the return. Sec. 6013(d)(3). However, pursuant to section 6013(e), a spouse (commonly referred to as an innocent spouse) can be relieved of tax liability if that spouse proves: (1)

A joint income tax return was filed; (2) the return contained a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) in signing the return, the spouse seeking relief did not know, and had no reason to know, of the substantial understatement; and (4) under the circumstances it would be inequitable to hold the spouse seeking relief liable for the understatement. Sec. 6013(e). The spouse seeking relief bears the burden of proving that each of the four statutory requirements has been satisfied, and the failure to satisfy any one of the requirements will prevent innocent spouse relief. Bokum v. Commissioner, 94 T.C. 126, 138-139 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).

Respondent concedes that the first two statutory requirements for innocent spouse relief have been satisfied. Respondent contends, however, that petitioner knew or should have known of the unreported income from petitioner's employment with the Ruidoso Valley Chamber of Commerce and the net income from PFA, and that it would not be inequitable to hold petitioner liable for the deficiency and additions.

1.  Knowledge of Understatement

To establish lack of knowledge of the understatement, petitioner must show that she was unaware of the circumstances giving rise to the omission of income. See Purcell v. Commissioner, 86 T.C. 228, 238 (1986), affd. 826 F.2d 470 (6th Cir.

1987).  She must further show that she lacked both actual and constructive knowledge of the omission such that a reasonable person could not be expected to know that the tax liability stated was erroneous or that further inquiry was necessary.  See Stevens v. Commissioner, 872 F.2d 1499, 1504-1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63.

Whether the spouse seeking relief had reason to know of the substantial understatement is a question of fact to be determined after reviewing the entire record.  Guth v. Commissioner, 897 F.2d 441 (9th Cir. 1990), affg. T.C. Memo. 1987-522.

### a.  Mr. Muhn's Chamber of Commerce Income

Petitioner asserts that she was unaware that Mr. Muhn's income as a bookkeeper with the Ruidoso Valley Chamber of Commerce was not reported on their joint Federal income tax return.  She claims that she did not review the return and that the paychecks made payable to PFA went into a checking account used only for preauthorized withdrawals.  As such, petitioner contends, she "could not be expected to unravel the financial web strung by her accountant husband".

Although petitioner may not have been aware of the amount of compensation received by Mr. Muhn from the Ruidoso Valley Chamber of Commerce or where those amounts were going, she certainly was aware that Mr. Muhn was employed there and earned income.  Even a cursory examination of the 1991 tax return would have alerted

petitioner that Mr. Muhn's compensation was not reported. See Chandler v. Commissioner, T.C. Memo. 1993-540, affd. without published opinion 46 F.3d 1131 (6th Cir. 1995). The failure to review a tax return generally does not absolve a taxpayer of liability. Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228. A taxpayer may not generally close her eyes and plead ignorance. Edmondson v. Commissioner, T.C. Memo. 1996-393. Petitioner was obligated to inquire into the failure to report that income, and there is no evidence of such an investigation. See Park v. Commissioner, T.C. Memo. 1993-252, affd. 25 F.3d 1289 (5th Cir. 1994). Thus, we hold that petitioner is not entitled to innocent spouse relief with respect to Mr. Muhn's unreported income from the Ruidoso Valley Chamber of Commerce.

b. Net Income From PFA

Petitioner argues that she was not involved in the operation of PFA and signed documents relating to the trust only at her husband's direction. Consequently, petitioner contends that she had no knowledge of her husband's role in the trust and did not know that any such role would result in taxable income.

On brief, petitioner asserts:

The organization [PFA] has a complex structure. The structure of the organization utilized a "creator", "trustee" and off-shore bank as "interim beneficiary". Petitioner did not understand the complex structure of the organization to which she was directed by her

husband to transfer her residence and other real property. Clearly, Petitioner could not have understood the possible consequences of her transfers of real property to the organization because it was unconscionable that she would transfer control of the residence she occupies to persons unknown to her.

Petitioner was directed to sign documents by her husband under the belief that she was helping her son acquire businesses by providing equity to be used as net worth to qualify for purchase money financing. Signing documents as "exchangor" and transferring real property was the only connection of the Petitioner to the organization. Petitioner was neither employed by nor rendered services to the organization, and was not otherwise connected with or involved in the organization whatsoever. Petitioner had no knowledge of and had no reason to know the affairs of the organization.

Although petitioner had no role in PFA, she knew that her husband was involved in obtaining financing with her son and that she was asked to transfer her real estate interests to PFA. There is no evidence that petitioner ever inquired as to the significance of these events, whether at the time of: (1) PFA's creation; (2) Mr. Muhn's audit; or (3) the tax return's filing. In any case, it is knowledge of the transactions, not the tax consequences of those transactions, that is material. Quinn v. Commissioner, 524 F.2d 617, 626 (7th Cir. 1975), affg. 62 T.C. 223 (1974); McCoy v. Commissioner, 57 T.C. 732 (1972).

Further, although there is no evidence as to petitioner's lifestyle during 1991, a cursory review of the reported adjusted

gross income and petitioner's bank statements would have revealed that expenses exceeded reported adjusted gross income by almost 2 to 1. See Chandler v. Commissioner, supra; Tafolla v. Commissioner, T.C. Memo. 1991-576. The record does not indicate that petitioner was prohibited from reviewing those documents or investigating the family finances, or that Mr. Muhn was deceitful about the family finances. See Cousins v. Commissioner, T.C. Memo. 1995-129. Such an inquiry would have seemed appropriate given that the 1991 return was filed during Mr. Muhn's audit. Thus, we hold that petitioner is not entitled to innocent spouse relief with respect to the net income from PFA.

2. Inequities of Holding Petitioner Liable

Assuming arguendo that petitioner did not know or did not have reason to know of the omitted income on the 1991 Federal income tax return, petitioner failed to meet her burden of proof with respect to the inequities of holding her liable for the deficiencies and additions to tax. Rule 142(a).

In examining the inequity of holding petitioner liable, we focus on whether she received significant benefit from the omission of income, Estate of Krock v. Commissioner, 93 T.C. 672, 677-678 (1989), and whether she was deserted, divorced, or separated, sec. 1.6013-5(b), Income Tax Regs. We may also consider whether petitioner will suffer undue hardship as a result of the

deficiencies.  See <u>Dakil v. United States</u>, 496 F.2d 431, 433 (10th Cir. 1974).

On brief, petitioner argues that she should not be held liable for helping her son start his business.  This, however, is not a basis for innocent spouse relief.

It is unclear from the record whether petitioner benefited from the omitted income; however, it is clear that the omitted income items constituted more than 100 percent of the reported income.  There is no evidence that the omitted income was used in a manner that did not benefit petitioner.  In fact, the income from the Ruidoso Valley Chamber of Commerce was deposited into an account petitioner owned and was used to make payments on her house, truck, and travel trailer during 1991.

In examining the inequity of holding petitioner liable, we also consider the status of the Muhns' marriage because it may affect petitioner's ability to satisfy the tax liability.  In this regard, we are mindful that the parties stipulated that petitioner and her husband (1) were not contemplating separation or divorce, (2) have not entered into any marital property agreements, and (3) did not own separate property.

Giving consideration to all the facts herein, we do not believe it would be inequitable to hold petitioner liable for the deficiencies and additions to tax.

To conclude, we hold that petitioner is not entitled to innocent spouse relief.

<u>Decision will be entered</u>

<u>for respondent</u>.